HANKS vs HENDRICKS ET AL.

Opinion delivered October 6, 1900.

1. *Equity Will Not Enforce Stale Claims.*

In a suit in equity, commenced in 1898 for the enforcement of claims against an Indian fund, part of which had been due 47 years and the balance 21 years, *Held*, That equity will not enforce claims so stale, where the party has slept upon his rights and acquiesced in the failure to recognize his claim for such a length of time.

2. *Indians—Old Settler Cherokee Funds—Claims Against, Barred by Statute of Limitations.*

In 1898 plaintiff commenced an action in equity to recover from certain Old Settler Cherokees, a claim for services rendered as a delegate and commissioner of such Indians in recovering from the United States government a fund due such Indians, and sought to establish a lien upon such fund which was received from the government for distribution in 1897, when the services were all rendered prior to the year 1878. *Held,* That

under Mansf. Dig. Sec. 4478 (Ind. Ter. Stat. Sec 2945) and Secs. 4483, 4488 (2950, 2955), which went into effect in the Indian Territory May 21, 1890, this claim is barred by the limitations therein prescribed.

*3.  Indian Funds—Failure to Present Claim Against to Indian Commissioner—Complaint Insufficient.*

Act of Cong. April 29, 1874, provides that it shall not be lawful for any United S ates officer or other persons under its employ or control to recognize the binding force or legality of, or enforce any contract or agreement with any Indian tribe or individual Indians for services to said Indians relative to any claims under laws or treaties with the United States or due from the United States, unless such contract was in writing, duly signed, and then not until first presented to, examined and indorsed by the secretary of the interior and commissioner of Indian affairs. *Held.* That a claim for services rendered in securing from the United States funds due the Old-Settler Cherokees under treaties and laws, which is not in writing and has not been examined and indorsed as above, cannot be enforced, and a complaint failing to allege these necessary facts is bad on demurrer.

*4   Indian Funds—Appropriated For Specific Purpose, May Not be Diverted.*

Rev. St. U. S. Sec. 2097 provides, "No funds belonging to any Indian tribe with which treaty relations exist shall be applied in any manner not authorized by such treaty; * * * nor shall money appropriated to execute a treaty be transferred or applied to any other purpose * * * ". Act of Cong. June 7, 1897, made a specific appropriation of certain of the Old Settler Cherokee funds to a certain purpose, and provided for the payment of same to a designated agent for distribution. *Held,* That the court is without jurisdiction to divert said fund, in the possession of the agent, from the persons designated to receive it.

Appeal from the United States Court for the Northern district.

WILLIAM M. SPRINGER, Judge.

Suit by Emma Hanks, as administratrix of John L. McCoy, against William H. Hendricks and others, to establish a lien, for services rendered by deceased to the Old-Settler Cherokees, on funds received from the government by defendants. Judgment in favor of defendants. Plaintiff appeals. Affirmed.

On February 17, 1898, the appellant (plaintiff below) filed her complaint in equity against the appellees (defendants below), and states: That on December 23, 1893, she was appointed by the district court of the Cherokee tribe of Indians and qualified as administratrix of the estate of her father, John L. McCoy, deceased, and attaches as an exhibit a copy of her letters of administration. That she and her deceased father were both members of the Cherokee tribe of Indians. That defendants William H. Hendricks, William Wilson, D. W. Lipe, Mark Bean, John Drew, and John W. Drake are members of said Cherokee tribe of Indians, and Joel M. Bryan is a citizen of the United States. She alleges that the Old-Settler Cherokees are a band or organization composed largely of citizens of the United States residing in various states, and are not members of the Cherokee tribe of Indians, "but, by reason of their race, descent, and their removal with a band of their said tribe or nation before the removal of the nation proper, secured a right to participate in what is commonly known as the 'Old-Settler Cherokee Fund' or 'commutation money,' to reimburse them for the expenses in moving west." That for many years the Old Settlers or Cherokee band of Cherokees have maintained an independent organization, for the pupose of prosecuting certain claims against the United States and for other purposes, and for those purposes have maintained a council, which was duly authorized to transact their business. "That many years ago the said Old-Settler council duly appointed and authorized the defendants Joel M. Bryan, W. H. Hendricks

(28)

and William Wilson to act as commissioners on the part of
the Old-Settler Cherokees to represent them ( the Old-Settler
Cherokees) in prosecuting and recovering their claims
against the United States, and as such commissioners they
became the agents of said band in matters pertaining to its
claims against the United States." Plaintiff ( appellant) com-
plains of defendants that they, and each of them, refused
and neglected to audit, pass upon, allow, or pay the claim of
the plaintiff as administratrix, though often requested so to
do, "out of the said trust funds in the control of the defend-
ants." "The said plaintiff states that her said intestate,
John L. McCoy, late deceased, during the year 1843, was
elected as the delegate of the Old-Settler Cherokees afore-
said, and as their authorized agent and representative served
them in that capacity, both in the Cherokee country and at
Washington City, the capital of the United States, until the
close of his life, a period of about 50 years. That, besides
the time lost in their behalf, he expended large sums of
money in and about this business. That he was elected by
the Old-Settler convention of that band of said Cherokees at
Tahlequah, in 1875, as one of the commissioners of the same,
to exercise his influence before congressional committees
and the interior department at Washington in securing the
appropriation by the United States of the award of the sum
of $832,297.52, and as such actively served in that behalf,
and, in connection with the said defendants named as com-
missioners; actually secured the said award. That his col-
leagues on said commission were paid for their services as
commissioners, and reimbursed for their expenses, but her
intestate received nothing. That a full and true itemized
account of the claim for his said advances and expenses is
hereto attached, made a part thereof, marked as 'Exhibit B.'
That the amount of his proven account therein is $10,845,
and that, in addition to the same, decedent is entitled to 2
per cent. of the 35 per cent. of the said amount recovered,

$832,297.52, which was the rate at which the Old-Settler convention voted to pay the said commissioners, $5,826,—the amount paid to his colleagues; and that the amount of his aggregate said claims, viz, $16,671, is due said estate." Plaintiff (appellant) further alleges that said Old-Settler council secured an appropriation from congress to pay the amount found due them by the supreme court of the United States, and the said Old Settlers selected and designated defendant D. W. Lipe as the person to receive said moneys from the United States. That the said Lipe did receive the sum due said Settlers, 'less the amount held by the United States to pay certain fees, the exact amount of the same being to the pleader unknown; the first installment of said award having been distributed among the beneficiaries of said fund." That after the passage of the act of congress approved June 7, 1897, providing for the payment of the said balance due the Old Settlers, the defendants Mark Bean, John Drew, and J. W. Drake were appointed by said Old-Settler council as an auditing committee to audit the claims of all those who had claims against the said fund, and the defendant Lipe was designated by said Old-Settler council as the person to whom the United States should pay said funds. That said plaintiff presented the claim set out in her Exhibit B. hereto annexed, to said auditing committee for allowance, and they refused to pass upon the same, and therefore the same was not honored by the said D. W. Lipe. That the said auditing committee allowed and the said Lipe paid other claims against said funds and are exhausting the same by such payments and, unless the defendants are restrained from further disposing of said funds, plaintiff will be deprived of the money due her intestate for his services, and be wholly without a remedy to collect the same. Plaintiff (appellant) alleges that she is informed and believes that said defendants have continued to audit claims, and said Lipe to pay same, well knowing the equities of this

claimant. That said fund is insufficient to pay all of the claims filed against it, and that said auditing committee and paymaster should be enjoined from allowing and paying any other of said claims until the question can be adjudicated. Plaintiff alleges "that the claims of her intestate is a prior lien on said fund; and her equities senior and superior to others," and asks judgment for $16, 671 and that her claim be adjudged superior to others. That defendants be enjoined from allowing or paying other claims and that said Lipe be ordered to pay the said fund into the registry of the court.

The defendants demur to the complaint, and say the same is insufficient in law, because: "(1) It appears from said complaint that the rights in equity, if any plaintiff's intestate had, accrued more than fifty years since, and that plaintiff's cause of action is a stale demand, of which equity will not take cognizance nor enforce. (2) Because it appears from said complaint that, if plaintiff's intestate ever had any cause of action by virtue of the contract alleged, that the same has been barred by the five-year statute of limitations. (3) Because, if plaintiff's intestate had any right by virtue of the contract alleged, such right was to have payment out of the money first thereafter ascertained to be due the Old-Settler Cherokees, and available by appropriation of congress, and that, as such appropriation was made more than fifty years ago, plaintiff is not entitled to any part of funds appropriated thereafter. (4) Because it appears from said complaint that the contract sued upon was executed long prior to the act of April 29, 1874 (18 Stat. 35), and the complaint fails to allege that said contract was ever presented to, proven up before, or indorsed by the secretary of the interior, as required by said law, by reason whereof said contract, as alleged, is null and void. (5) Because plaintiff seeks to assert rights in equity against the fund appropriated by specific appropriation of congress in satisfaction and execution of rights arising out of a treaty of

the United States with the Indians, and such complaint fails to show express authorization to this court to divert said funds from the purposes for which they were specifically appropriated to the satisfaction of plaintiff's claim. (6) Because this court has not jurisdiction of the cause of action asserted by plaintiff, or of the fund against which said cause of action is asserted (7) Because it is apparent that plaintiff's cause of action, if any she has, is within the class of those jurisdiction to enforce which is exclusively in the secretary of the interior and commissioner of Indian affairs of the United States. (8) Because, in the endeavor to obtain a judgment against Hendricks, Bryan, et al., personally, there is a misjoinder of causes of action; and because, if plaintiff has any personal cause of action against those defendants, it is for the breach of a contract, for which she has an adequate remedy at law, by reason whereof this court has not jurisdiction of the same in equity." The demurrer was sustained by the court, plaintiff declined to plead further, and prayed an appeal to this court.

*Z. T. Walrond* (Russell Wiggins, of counsel), for appellant.

*Stuart, Lewis, Gordon & Rutherford*, for appellees.

TOWNSEND, J. The counsel for appellant, in discussing the grounds of demurrer, says the demurrer was sustained by the trial court "only upon the sixth ground thereof, yet we will dwell lightly upon the others"; and insist that, because the complaint is for advances made and services performed by plaintiff's intestate up to his death, in 1893, and the act of congress creating the fund was approved June 30, 1894, therefore the first and second grounds of demurrer are not well taken. From an examination of the account filed and attached to complaint as Exhibit B, it ap-

pears that the first item in the account is for services rendered in 1842, but in the complaint it is alleged that ''he was appointed and commissioned by the Old-Settler council, February 23, 1843, as their delegate to Washington,'' and for his services from that date to 1851, less what was paid him, there was due him $3,653; for services rendered from 1875 to 1877, $2,160. It is alleged that he was entitled to 2 per cent. of the 35 per cent. of the amount recovered, amounting to $5,826. The date of this last item is not set out. It thus appears that the first balance had been due, at the bringing of this suit, a period of 47 years, and the second balance for a period of 21 years. The two first accounts were sworn to by appellant's intestate on March 27, 1882. It occurs to me that these demands are somewhat stale, and equity aids the vigilant, and not those who slumber on their rights, and, as has been said by an eminent English chancellor, Lord Camden: ''A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence.'' 1, Pom. Eq. Jur. § 419.

*Equity will not enforce stale claims.*

In 1889 a United States court was established in the Indian Territory, and statutes of limitation, as contained in Mansfield's Digest, were put in force May 21, 1890 (Ind. T. Ann. St. 1899). If the United States court in the Indian Territory had any jurisdiction of this case at all, then a forum existed here from that date, but this suit was not instituted until February 17, 1898. The statutes of limitation are as follows:

''Sec. 4478. The following action shall be commenced within three years after the cause of action shall accrue, and not after: First, all actions founded upon any contract or liability, express or implied, not in writing.''

"Sec. 4483. Actions on promissory notes and other instruments in writing, not under seal, shall be commenced within five years after the cause of action shall accrue." Mansf. Dig. § § 4478, 4483 (Ind. T. Ann. St. 1899, § § 2945, 2950).

There are other sections not germane.

"Sec. 4488. All actions not included in the foregoing provisions shall be commenced within five years after the cause of action shall have accrued." Mansf. Dig. § 4488 (Ind. T. Ann. St. 1899, § 2955).

It would seem that the statutes of limitation were an Limitations. absolute bar to this action. But the main question discussed by the briefs of both appellant and appellees is as to the nature and character of the fund sought to be reached by this action. On behalf of appellant, it is urged that the act of Congress of June 7, 1897, which is as follows:

"An act making appropriations for the current and contingent expenses of the Indian department and for fulfilling treaty stipulations with various Indian tribes for the fiscal year ending June 30, 1898, and for other purposes. Approved June 7, 1897.   *   *   *

"That the secretary of the interior be, and he is hereby, authorized and directed to pay to the following named persons, and not to their assignees, immediately upon the passage of this act, out of the balance remaining of the thirty-five per centum reserved for payment of legal services rendered and expenses incurred, under contract entered into by the Old-Settlers or Western Cherokee Indians, through their authorized commissioners, in the prosecution of their claim, appropriated for by act of congress approved August 23, 1894, (28 Stat. p. 451,) entitled 'An act making appropriations to supply deficiencies in the appropriations

for the fiscal year ending June 30, 1894, and for prior years and for other purposes,' namely:

"To William S. Peabody, ten thousand dollars.

"To Charles A. Webb, administrator of the estate of C. M. McLoud, two thousand five hundred dollars.

"To Marcus Erwin, administrator of the estate of Marcus Erwin, deceased, two thousand five hundred dollars.

"To Theodore H. N. McPherson, two thousand five hundred dollars.

"To Mary E. Carey, executrix of the estate of James J. Newell, deceased, two thousand dollars.

"To John A. Sibbald, one thousand dollars.

"To Samuel W. Peel, two thousand five hundred dollars.

"To Reese H. Voorhees and John Paul Jones, three thousand five hundred dollars.

"To David A. McKnight, two thousand dollars.

"To C. M Carter, one hundred and sixty-seven dollars and fifty cents.

"To Belva A. Lockwood, five hundred dollars.

"To J. L. Baugh; two thousand five hundred dollars.

"To Stephen W. Parker, two thousand five hundred dollars.

"To Joel M. Bryan, five thousand two hundred and fifteen dollars and six cents.

"And the remainder of said sum of money after paying the foregoing specific sums shall be paid to the Old Settlers or Western Cherokee Indians, on their requisition or requisitions made therefor by the national treasurer of the Cherokee Nation, or by such other person or persons as said Old Settlers or Western Cherokees may, in special council, appoint for that purpose: provided, that the secretary of the interior shall take a receipt from the person so appointed to receive said money for the said Old Settlers or Cherokee Indians, and every person receiving the sums of

money herein specified shall receipt in full for all claims against the aforesaid fund, and such payment shall extinguish every right and claim of any kind, of any one of said parties to any part of said funds of seventy-eight thousand seven hundred and sixty-five dollars and thirteen cents." 30 Stat. 88.

—By providing that "the remainder of said sum of money, after paying the foregoing specific sums, shall be paid to the Old Settlers or Western Cherokee Indians, on their requisition or requisitions made therefor by the national treasurer of the Cherokee Nation. or by such other persons or persons as said Old Settlers or Western Cherokees may, in special council, appoint for that purpose," and the Old Settlers in special council having designated D. W. Lipe the national treasurer of the Cherokee Nation to receive said funds, thereby created D. W. Lipe a trustee of the fund, and, by reason of thus being a trustee, that he is within the jurisdiction and subject to the orders of the United States court in the distribution of said fund. Appellant then proceeds to cite authorities to establish certain propositions —First, that "a trustee, having notice that it is doubtful if the trust fund should be distributed according to the trusts under which he holds it, should apply to the court for its direction before he executes the trust, by paying over the fund"; second, "where a trustee is a party, a court of equity has jurisdiction, and is the appropriate tribunal"; third, that it is "a condition precedent that the provision in favor of a cestui que trust shall not vest until his debts are paid." Appellant also cites authority "that an attorney has a lien on amount recovered as a contingent compensation for professional services," and that this rule applies in the prosecution of claims against the government.

The question, then, presents itself, is this such a fund as can be taken into a court of equity, and does appellant

occupy such a relation to the fund that she can assert any legal or equitable claim to the same in any court? It becomes therefore pertinent to inquire how this fund arose, and what limitations, if any, are placed on its disbursement. A very full and complete history of the claims of the Old Settlers or Western Band of Cherokee Indians is given in the case of U. S. vs Old Settlers, decided by the supreme court of the United States, and reported in 148 U. S. 427, 13 Sup. Ct. 650, 37 L. Ed. 509. It appears that these claims are based on treaties made and entered into between the Old Settlers or Western Band of Cherokees,—the first made on May 28, 1828, and a supplemental treaty made and proclaimed February 13, 1833. Afterwards, and on December 29, 1835, a treaty was entered into between the United States and the Eastern Cherokees, granting to the Eastern Cherokees the same lands which, under the treaties of 1828 and 1833, the Western Band of Cherokees claimed had been given to them; and thereupon they made very extensive claims against the United States for an alleged violation of their treaty rights, and in an effort to settle and adjust those claims, and to, if possible, bring about a settled condition of affairs in the Cherokee country, which was the scene of intestine disorders of the gravest character, destroying the rights and liberties of certain of the Cherokees and endangering the peace of the frontier, a treaty was entered into between the United States and the representatives of both the Eastern and Western Cherokees, on August 6, 1846, and, to carry out the provisions of said treaty, congress, on September 30, 1850, made an appropriation to the Old Settlers or Western Cherokees of $532,896.90, and directed that the same should be paid as follows: "That in no case shall any money hereby appropriated be paid to any agent of said Indians or to any other person or persons than the Indian or Indians to whom it is due, provided also, that the Indians who shall receive said money shall first respectively sign the receipt or release,

acknowledging the same to be in full of all demands under
the fourth article of said treaty." 9 Stat. 544–556. The ap-
propriation was made several years after the employment of
appellant's father, as set out in her complaint, but it shows
clearly a purpose to give the money to the individual Indian,
and not "to any agent of said Indians or to any other person
or persons." In 1872 congress passed an act providing that
"no agreement shall be made by any person with any tribe
of Indians or individual Indians   *   *   *   in consideration
of services for said Indians relative to their lands, or to any
claims growing out of, or in reference to, annuities, install-
ments, or other moneys, claims, demands, or thing, under
laws or treaties with the United States,   *   *   *   unless
such contract or agreement be execu†ed and approved as fol-
lows:   First. Such agreement shall be in writing, and a
duplicate of it delivered to each party.   Second. It shall be
executed before a judge of a court of record, and bear the
approval of the secretary of the interior and the commis-
sioner of Indian affairs indorsed upon it. '   A number of
other requirements are made, and then section 2104 Rev. St.
is as follows:

"Sec. 2104. No money shall be paid to any agent or
attorney by an officer of the United States under any such
contract or agreement, other than the fees due him for serv-
ices rendered thereunder; but the moneys due the tribe, In-
dian, or Indians, as the case may be, shall be paid by the
United States. through its own officers or agents, to the
party or parties entitled thereto; and no money or thing
shall be paid to any person for services under such contract
or agreement, until such person shall have first filed with
the commissioner of Indian affairs a sworn statement, show-
ing each particular act of service under the contract, giving
date and fact in detail, and the secretary of the interior and
commissioner of Indian affairs shall determine therefrom
whether, in their judgment, such contract or agreement has

been complied with or fulfilled; if so, the same may be paid, and if not, it shall be paid in proportion to the services rendered under the contract "

The foregoing could only apply to contracts subsequently made, but congress, on April 29, 1874, passed "An act relative to private contracts or agreements made with Indians prior to May 21, 1872," in the first section of which it is provided as follows: "That hereafter it shall not be lawful for any United States officer, or other person under its employ or control, to recognize the binding force or legality, or in any manner sustain or enforce or counsel, or give any aid or assistance to sustain or enforce, any contract or agreement made by any person or persons, or corporation, with any band, tribe or nation of Indians, or individual Indian or Indians, not a citizen of the United States, entered into prior to the date of the act of congress entitled 'An act regulating the mode of making private contracts with Indians,' approved May twenty-first, eighteen hundred and seventy-two, for the payment or delivery of any money or other thing of value, in present or prospective, or for the granting or procuring any privilege to him or her, or any other person or persons, or corporation, in consideration of services for, or advancements made to, said Indians relative to their lands, or to any claim growing out of or in reference to annuities, installments, or other moneys, claims, demands, or thing under laws or treaties with the United States, or official acts of any officer thereof, or in any way connected with or due from the United States, unless such contract or agreement was reduced to writing and duly signed by the parties in interest thereto at the time it was entered into and fully made known to the parties at the time the contract was signed, and then not until such original written contract shall first have been presented to and examined by the secretary of the interior and the commissioner of Indian affairs, and these facts by them severally indorsed thereon, and a copy

of said contract and of any assignment that may have been made thereon duly entered of record in the office of the commissioner of Indian affairs." 18 Stat. 35. The act further requires proofs to be made, and may require additional proofs that said contracts are not unjust, fraudulent, or exorbitant, etc. There is no allegation in the complaint in the case at bar that any contract had been "presented to and examined by the secretary of the interior and the commissioner of Indian affairs, and these facts by them severally indorsed thereon." Therefore, as provided by said act, "it shall not be lawful for any United States officer or other person under its employ or control, to recognize the binding force or legality * * * of any such contract." This would seem to be conclusive of any claim being allowed under such a contract as set up in this case, as it is alleged to have been made long prior to 1874. The Old Settlers, after securing the appropriation of September 30, 1850, and upon its receipt, protested that it was not in full satisfaction of their demands against the United States, and subsequently congress passed an act referring the controversy to the court of claims, and the judgment of that court, with slight modification, was affirmed by the supreme court of the United States (see 148 U. S. 427, 13 Sup. Ct. 650, 37 L. Ed. 509); and congress, to pay said judgment, in the deficiency appropriations for the fiscal year ending June 30, 1894, appropriated to the Old Settlers as follows: "The 'Old Settlers' or Cherokee Indians, by Joel M. Bryan, William Wilson and William H. Hendricks, commissioners, and Joel M. Bryan, treasurer, and so forth, eight hundred thousand three hundred and eighty-six dollars and thirty-one cents; and the commissioner of Indian affairs is directed to withhold from distribution among said Indians only so much of that part of the said judgment set apart by the said Indians for the prosecution of their claim as is necessary for him to pay the expenses, and for legal services justly or equitably payable on account of said prosecution." 28 Stat. 451.

It appears from the statements in the briefs of counsel that 65 per cent. of this sum was paid to the Old Settlers, and that the secretary of the interior retained 35 per cent. '·to pay the expenses and for legal services." Of this amount of 35 per cent. he paid $193,932.57 for attorney's fees and expenses, leaving a balance of about $80,000 of the 35 per cent. still in the possession of the United States, and this was ordered paid out in a certain manner by the act of congress of June 7, 1897, supra. It thus appears that this fund held by defendant Lipe was a part of specific funds appropriated by the congress of the United States to carry out certain treaty stipulations and provisions. By section 2097 Rev. St. U. S., it is provided: '·No funds belonging. to any Indian tribe with which treaty relations exist shall be applied in any manner not authorized by such treaty, or by express provisions of law; nor shall money appropriated to execute a treaty be transferred or applied to any other purpose, unless expressly authorized by law." The complaint in this case does not show any provision of the law authorizing any court to divert this fund from the purpose in said act of June 7, 1897, expressed, and under the said section 2097, supra, it cannot be diverted without being "expressly authorized by law." The Revised Statutes of the United States provide who shall have the management of Indian affairs, and how moneys shall be paid out by the United States to Indians, as follows: Section 463 provides: "The commissioner of Indian affairs shall, under the direction of the secretary of the interior, and agreeable to such regulations as the president may prescribe, have the management of all Indian affairs and of all matters arising out of Indian relations." Section 2086 provides: "The payment of all moneys and the distribution of all goods stipulated to be furnished to any Indian or tribe of Indians shall be made in one of the following ways, as the president or the secretary of the interior may direct: In cases where the im-

Funds appropriated for specific purpose, may not be diverted.

perious interests of the tribe or individuals intended to be benefited, or any treaty stipulation, requires the intervention of an agency, then to such person as the tribe shall appoint to receive such money or goods: or, if several persons shall be appointed, then upon the joint order or receipt of such persons." Section 2089 provides: "At the discretion of the president, all disbursements of moneys, whether for annuities or otherwise, to fulfill treaty stipulations with individual Indians or Indian tribes, shall be made in person by the superintendent of Indian affairs where superintendencies exist, to all Indians or tribes within the limits of their respective superintendencies, in the presence of the local agents and interpreters, who shall witness the same, under such regulations as the secretary of the interior may direct." The act of 1894, supra, contains the following: "And the commissioner of Indian affairs is directed to withhold from distribution among said Indians only so much of that part of the said judgment set apart by the said Indians for the prosecutions of their claim as is necessary for him to pay the expenses, and for legal services, justly or equitably payable on account of said prosecution:" No one had authority but the commissioner of Indian affairs to pass upon the claims such as set up in the suit at bar, and no court could interfere with the exercise of that authority. From 1894 to 1897 the distribution of the fund sought to be reached by this suit was in the hands of the commissioner of Indian affairs, and "every claimant entitled to an interest in the fund had this time in which to prefer his claim, in order that the same might be investigated, and the department of the interior might make a just determination as to what amount of compensation should be allowed. It was essential that all who proposed to claim a part of the fund should present their claims to this officer, in order that there might be a fair determination of what relative service each had performed." When congress, by the act of June 7, 1897,

distributed the balance of this fund remaining, it was a specific appropriation to certain individuals named, and the balance to the Old Settlers, and this court is powerless and without jurisdiction to divert said funds from the persons in said act designated. In our opinion, the judgment of the court below is correct, and it is therefore affirmed.

CLAYTON, C. J., and THOMAS and GILL, JJ., concur.