DANIELS, et al, vs MILLER, et al.

Opinion delivered September 25, 1902.

1. *Pleading—Misjoinder of Parties—Properly Attacked by Demurrer.*
    Where there is a misjoinder of parties plaintiff, such error can be taken advantage of by demurrer.

2. *Indian Lands—Unlawful Detainer—Parties—Indian Nations.*
    An action to recover possession of Indian lands can be brought by an Indian nation only under the provisions of Sections 3, 5, and 6 of Act of Congress June 2, 1898, and then the requirements of these sections must be complied with. When brought by a member of the tribe, then the Nation is not a proper party: and a complaint failing to state that the chief or governor of the nation has refused to bring such suit, is demurrable.

Appeal from the United States Court for the Northern District.

JOSEPH A. GILL, Judge.

Action to recover possession of land by John L. Miller and the Cherokee Nation against Henry Daniels and others. Judgment for plaintiffs. Defendants appeal. Reversed.

This action was instituted on December 27, 1899, by the plaintiffs (appellees here), against the defendants (appellants here) to recover the possession of a certain farm or improvement described. Plaintiffs allege that plaintiff Miller is a Cherokee citizen, and that the defendant Daniels are not citizens or members of any tribe, and that the citizenship of defendant Miller is unknown. Plaintiffs allege that the Cherokee Nation claims title to said improvement by having the land upon which said improvement is situated patented by the United States on December 31, 1838, and that on April 23, 1897, said improvement was sold as an intruder improvement to Walter Carr, a citizen of the Cherokee Nation, by J. C. Ward, sheriff of Cooweescoowee district of said nation, under and by virtue of an act of the national council of the Cherokee Nation, and the amendments thereto, which are fully set out in said complaint; that said sheriff executed a certificate of purchase to said Carr on the day of sale, and on August 10, 1899, executed another certificate of purchase to correct inaccurate description in the first certificate; that said Carr died on the ——— day of ———, 1898, leaving no wife or children, and that John Carr, his father, and Walter Carr, his brother, being his only heirs, sold said improvement to plaintiff Miller on July 14, 1899, and on the back of the conveyance is the following indorsement: "This is to state that John Miller has assumed the indebtedness of Walter Carr to the Cherokee Nation for the unpaid installments on the within-described improvements, and the within transfer from John Carr and W. L. Carr is hereby approved by me. This is 30 Aug., 1899. (Signed) S. B. Mayes, Principal Chief of the Cherokee Nation." Plaintiffs further allege that defendants are in the unlawful possession of said improvement, and have been since April 23, 1897; that plaintiff Miller is lawfully entitled to possession, but defendants refuse to give possession, although demand for same has been made as required by section 5 of the act of congress of June 28, 1898, (Ind. Ter. St. 1899, §§ 57q-57z20).

Plaintiffs ask judgment for possession and for damages. On January 15, 1900, defendants demurred to plaintiff's complaint, as follows: "Demurrer. Now come the above-named defendants by their attorney, and demur to the plaintiffs' complaint filed herein for the following reasons, to wit: (1) That the plaintiff has no legal capacity to sue; (2) that the plaintiff John L. Miller has no legal capacity to sue in this case; (3) there is a defect of parties plaintiff; (4) that the complaint does not state facts sufficient to constitute cause of action. (Signed) M. M. Edmiston, Attorney for Defendants." On August 4, 1900, the demurrer was overruled, to which defendants excepted, and were allowed 30 days to answer. On January 11, 1901, defendants Daniels filed disclaimer, and say that they are holding as tenants of defendants Charlie and Mollie Miller, and said Millers filed answer, and say they are citizens of the Cherokee Nation; that defendant Mollie Miller is a Cherokee by blood, and that she and her family are entitled to allottment. Defendants deny that they are in the unlawful possession of said improvement, and deny any damage to plaintiffs, and "defendants deny that the sheriff ever sold said premises legally on the 23d day of April, 1897, or at any other time, to said Walter Carr." Defendants allege that they have been the owners of said premises since December 30, 1898, and say: "That on the 30th day of December, 1898, they bought the said premises of the defendant Henry Daniels, who was then in the possession of the same and had made the said improvements on the public domain of the Cherokee Nation, and sold the same under section 4 of the act of congress of June 28, 1898, known as the 'Curtis Act,' as said place was made since August 11, 1886. That immediately upon the purchase of said improvements by the said Miller and his said wife, said defendant Daniels became their tenant from year to year on said premises, and has occupied them ever since as such, and was their tenant at the institution of this suit." On January 12, 1901, plaintiffs filed demurrer to the answer of defendants Miller, as follows: "Come

the Cherokee Nation and John L. Miller, by their attorneys, and demur to the answer of the defendants filed herein, and for cause of demurrer say that the said answer failed to state facts sufficient to constitute a defense to this action. (Signed) Davenport & Thompson, Attorneys for Cherokee Nation. John B. Turner, Attorney for John L. Miller." On February 15, 1901, said demurrer was sustained, to which defendants excepted, and judgment rendered, to which defendants excepted, and prayed an appeal to this court, which was granted as follows: "Now, on this day this cause coming on to be heard upon the plaintiffs' demurer to defendants' answer herein, which, after argument by counsel on both sides, the court is pleased to sustain, and to the sustaining of said demurrer the defendants then and there excepted, and the defendants refusing to plead further, it is ordered, adjudged, and decreed by the court that plaintiffs have and recover of and from the defendants herein the premises in controversy in this suit, to wit, a certain farm or improvement situated about 3½ miles north of Ruby, Ind. Ter., and more particularly described as follows: 'In section 26, township 27 N., R. 17 E., the same being on the east side of Big Creek, said creek touching said improvement, and bounded on the north by Sam Whitmire's farm, on the south by Maryland Beck's improvement and Sam Harrison's farm, and on the east by Henderson Grimmett's farm, having thereon a log-house 14x16, a good smokehouse 10x12, and about 75 acres of cultivated land,'—together with $300 for its unlawful detention (said amount having been agreed upon by counsel on both sides here in open court), together with 6 per cent. interest thereon from this date until paid. And it further appearing to the court that there is due from the plaintiff John L. Miller to the Cherokee Nation the sum of $274 as part of the purchase money of said place, it is further ordered adjudged, and decreed by the court, that a writ of possession issue herein, and that said Miller be, and he is hereby, ordered placed in possession of said premises

upon his first paying into the registry of this court said sum of $274 with interest; from all of which the defendants except, and pray an appeal, which is granted by the court." On February 28, 1901, defendants filed a supersedeas bond.

*Smith & McCulloch* and *W. S. Stanfield,* for appellants.

TOWNSEND, J. Appellants have filed two assignments of error, as follows: "(1) In overruling the fourth ground of demurrer to the plaintiffs' complaint for two reasons, viz.: (a) There is a misjoinder of parties plaintiff; (b) the complaint does not state facts sufficient to constitute a cause of action. (2) In sustaining the demurrer to the answer of Charlie and Mollie Miller." The appellee has failed to file a brief in this action and present any authority for the institution of this suit in the manner the same has been instituted. If there is any other statute than the act of June 28, 1898, known as the "Curtis Act," that was in force at the institution of this suit, that authorized any Indian tribe to institute a suit to recover the possession of the land, our attention has not been called to the same. If said suit was instituted under the provisions of the said act of June 28, 1898 (Ind. Ter. St. 1899, §§ 57q-57z20), then it must have complied with the requirements of the following sections of said act:

"(3) That said courts are hereby given jurisdiction in their respective districts to try cases against those who may claim to hold as members of a tribe and whose membership is denied by the tribe, but who continue to hold said lands and tenements notwithstanding the objection of the tribe; and if it be found upon trial that the same are held unlawfully against the tribe by those claiming to be members hereof, and the membership and right are disallowed by the commission to the Five Tribes or the United States Court, and the judgment has become final,

then said court shall cause the parties charged with unlawfully holding said possessions to be removed from the same and cause the lands and tenements to be restored to the person or persons or nation or tribe of Indians entitled to the possession of the same."

"(5) That before any action by any tribe or person shall be commenced under section three of this act it shall be the duty of the party bringing the same to notify the adverse party to leave the premises for the possession of which the action is about to be brought, which notice shall be served at least thirty days before commencing the action by leaving a written copy with the defendant, or, if he cannot be found, by leaving the same at his last known place of residence or business with any person occupying the premises over the age of twelve years, or, if his residence or business address cannot be ascertained, by leaving the same with any person over the age of twelve years upon the premises sought to be recovered and described in said notice; and if there be no person with whom said notice can be left, then by posting same on the premises:

"(6) That the summons shall not issue in such action until the chief or governor of the tribe, or person or persons bringing suit in his own behalf, shall have filed a sworn complaint, on behalf of the tribe or himself, with the court, which shall, as near as practicable, describe the premises so detained, and shall set forth, a detention without the consent of the person bringing said suit or the tribe, by one whose membership is denied by it; provided, that if the chief or governor refuse or fail to bring suit in behalf of the tribe then any member of the tribe may make complaint and bring said suit."

Misjoinder of parties plaintiff can be taken advantage of by demurrer. Gassett vs Kent, 19 Ark. 602; Christian vs Crocker, 25 Ark. 327, 99 Am. Dec. 223; Pom. Code Rem. §§ 213-215. No allegations appear in the complaint, as required by section

3 of said act, and the complaint fails to comply with the requirements of section 6 of said act.   In Hargrove vs Cherokee Nation, 3 Ind. Ter. Rep. 478, (58 S. W. 669), Judge Clayton, in passing upon the action of the court below in overruling a demurrer interposed by the defendants in that case, which raised the identical question raised by the demurrer in this case, under section 6 of said act, says:  "'Sec. 6. That the summons shall not issue in such action until the chief or governor of the tribe, or person or persons bringing suit in his own behalf, shall have filed a sworn complaint on behalf of the tribe or himself, with the court, which shall, as near as practicable, describe the premises so detained and shall set forth a detention without the consent of the person bringing said suit, or the tribe, or by one whose membership is denied by it; provided, that if the chief or governor refuse or fail to bring suit in behalf of the tribe, then any member of the tribe may make complaint and bring suit.'  30 Stat. 495 (Ind. Ter. St. 1899, §§ 57q-57z20).   From a reading of the statute above set out, it is clear that the Cherokee Nation may have brought the suit without joining the prospective allottee, and, in case of its failure to bring the suit at all, its coplaintiff could have done so without joining the Cherokee Nation.  But the statute provides, as to this class of cases, 'that if the chief or governor refuse to fail or bring suit in behalf of the tribe, then any member of the tribe may make complaint and bring said suit.' It seems clear from this statute that the chief or governor is to take the initative, and bring the suit, and only in case of his failure or refusal to do so would another member or the tribe be authorized to bring the suit; and, to justify it by a member of the tribe. it must appear from the complaint that the chief or governor had refused or failed.   The complaint makes no such averments, and in fact could not have done so, because the nation is made a party to the suit by it.   The demurrer, therefore, should have been sustained, and the cause dismissed as to Claude Shelton."   .

There being no allegation in the complaint as required by section 6, we are of the opinion that the demurrer of the appellant should have been sustained, and the case dismissed as to either the Cherokee Nation or all the plaintiffs except the Cherokee Nation. The case is therefore reversed and remanded.