## DAVIS VS. OSWALT, EX.

By the common law, a *fieri facias* had relation to its *teste*, though in fact issued subsequently; and bound the goods of the defendant from that date: consequently, if tested before the death of the defendant, it could be taken out afterwards, and executed against his goods and chattels regardless of his death.

By our statute (*Dig. ch.* 67, *sec.* 27,) the lien of an execution, upon goods, etc., commences at the time the writ comes to the hands of the officer to be executed, where the judgment or decree does not constitute a lien upon the property.

But such is the effect of our probate statutes, that although a *fi. fa.* comes to the hands of the sheriff, before the death of the defendant, and thereby becomes a general lien upon all his personal property, yet the death of the defendant, before the officer makes a levy and seizes the property into his custody, suspends the execution of the process. (*State Bank vs. Etter*, 15 *Ark.* 272.)

But if the execution be levied upon the goods of the defendant therein before his death, the officer may sell them after his death to satisfy the execution. (14 *Ark. R.* 57.)

And so, where by decree of a Court of equity, certain property is condemned to be sold in satisfaction of a debt due from the defendant, and an execution or order of sale, commanding the officer to sell that particular property, come to his hands before the death of the defendant, the subsequent death will not prevent the seizure and sale of the property.

*Appeal from the Circuit Court of Phillips county in Chancery.*

The Hon. GEORGE W. BEAZLEY, Circuit Judge.

WATKINS & GALLAGHER, and PALMER for the appellant.

By the common law, and in those States where the common law is in force and not changed by statute, " The lien of an execution bears date from the *teste* of the writ, and although an execution is not, in reality, issued until after the death of the defendant, yet if it is issued and properly tested, as of a day previous to the death of the defendant, it is presumed to have been issued on the day of its teste, and by relation dates from that day, and by relation it can be executed by levy upon the

personal property of the defendant, and the same sold to satisfy the execution without reviving against the personal representatives:

In those States where, by statute, the lien of the execution dates from the time the execution is put in the hands of the sheriff, if the execution comes to the hands of the sheriff or other officer, prior to the death of the defendant, the lien commences from that time, and the subsequent death of the party cannot affect that lien, but the execution can be executed by levy upon the personal property of the deceased, and the same sold to satisfy the execution without reviving the judgment against the personal representative. *Fleetwood's Case* 8 *Co.* 171; *Audley vs. Halsey Cro.* 148; *Erwin's Lessee vs. Dundas et al.* 4 *How. S. C. R.* 75; *Fox vs. Lamar,* 2 *Bre.* 417; *Fryer vs. Denio,* 3 *Ala.* 254; *Coperton vs. Martin* 5 *Ala.* 217; *Boyd vs. Denio,* 6 *Ala.* 55; *Colingsworth vs. How,* 4 *Stew. & Port.* 237; *Hielman vs. Halst, ib.* 280; *Harrison vs. Banier,* 2 *Gill & John.* 359; *Newellen vs. Biles,* 1 *Dana* 419.

Under the statute (*Dig. sec.* 27, *p.* 498,) an execution becomes a lien upon the personal property of defendant and the real estate to which the judgment lien does not extend, from the time the writ is delivered to the officer in the proper county to be executed. The statutes relating to administration of estates do not interfere, in any manner, with the common law rules on this subject; and whenever the execution is placed in the officer's hands the lien commences, by presumption of law the execution thereof is commenced, and it being an entirety must be consummated.

The case at bar presents a much stronger case. Here the decree rendered, created a specific charge upon the identical property levied on, and the writ was ordered to issue against that particular property—being in the nature of a sequestration, and thereby specifically appropriating that to the payment of the particular debt, and in no event could it go to the executor as part of the general assets of the estate.

Mr. Chief Justice English delivered the opinion of the Court.

This was a petition to quash an execution, etc., determined on the chancery side of the Circuit Court of Phillips county, at the November term, 1855. The petition was filed by Wm. T. Oswalt as executor of Levisa Dobbins, deceased, stating, substantially, the following facts:

On the 8th of September, 1855, George Davis recovered, in said Court, a decree against 'Levisa Dobbins and her husband, Wilson D. Dobbins, for $1,242, with interest from 24th Nov'r, 1853, and costs. By the terms of the decree it was ordered, adjudged and decreed by the Court, that the amount thereof should be made out of, and from the sale of certain slaves, whose names, ages, etc., are stated. On the 23d of Sept., 1855, by direction of Davis, the clerk issued an order of sale, or execution on the decree, to the sheriff of said county, commanding him, that of the slaves aforesaid he cause to be made the debt, interest and costs, etc., returnable to the November term following: which came to the hands of the sheriff on the 26th of Sept., 1855. On the 29th of October, following, the sheriff levied the process upon all the slaves named therein, and advertized them for sale, etc.

On the 18th of October, 1855, after the order of sale came into the hands of the sheriff, and before he levied on the slaves, Levisa Dobbins departed this life, having made a will devising all her property to persons therein named, and appointing petitioner her executor. On the 23d of the same month, the will was duly probated, and letters granted to petitioner by the Probate Court of Phillips county.

The slaves aforesaid were the separate property of Mrs. Dobbins, secured to her by a marriage contract entered into between her and Wilson D. Dobbins prior to their marriage. He, though a party to the decree, had no interest in the slaves, except the use of them during the lifetime of his wife, Mrs. Dobbins; and by her death his interest terminated. By the laws of the State, she, being the sole owner of the slaves, had, under said marriage contract, full power to make a will, and devise

them; and by the provisions of the will the property therein vested in the petitioner as executor, etc.

Petitioner submits that inasmuch as the order of sale, or execution, was not executed before the death of Mrs. Dobbins, the levy made by the sheriff upon the slaves after her death, was void, and that he could not sell them under the process. That the decree, to be effectual as against Mrs. Dobbins, should be revived against petitioner as her executor, or certified to the Probate Court, and allowed and classed there as other claims against her estate. But the sheriff, under the direction of Davis, would proceed to sell the slaves under the order of. sale, etc., unless restrained, etc. Prayer that the process, or the levy thereof upon the slaves, be quashed, etc.

The order of sale, will of Mrs. Dobbins, etc., marriage contract, etc., are exhibited.

The Court, upon the final hearing of the petition, quashed the levy endorsed by the sheriff on the order of sale or execution, and ordered the slaves to be restored to the possession of Oswalt, as executor of Mrs. Dobbins, etc.

Davis appealed to this Court.

By the common law, a *fieri facias* had relation to its *teste*, though in fact issued subsequently, and bound the goods of the defendant from that date. Consequently, if *tested* before the death of the defendant, it could be taken out afterwards, and executed against his goods and chattels regardless of his death.

The theory or fiction, upon which this result was arrived at, was, that the execution was taken, in judgment of law, to have been issued at the time it bears date, however the fact may have been, and that being prior to the death of the defendant, and the goods being bound from the *teste*, or presumed issuing, execution upon them was deemed to have commenced in the lifetime of the party, and being an entire thing, might be completed notwithstanding his death. *Erwin's Lessee vs. Dundas et al.*, 4 *How. U. S. R.* 75. *Speer vs. Sample*, 4 *Watts* 369. *Fleetwood's Case*, 8 *Coke* 171.

By our statute: " No execution shall be a lien on the property in any slaves, goods or chattels, or rights or shares in any

stock, or any real estate, to which the lien of the judgment, order or decree does not extend, or has been determined, but from the time such writ shall be delivered to the officer in the proper county to be executed." *Dig. ch.* 67, *sec.* 27.

The effect of this statute was to repeal so much of the common law rule as made the lien of an execution upon goods, etc., extend back by relation to its *teste,* when issued subsequently: and to fix the commencement of the lien at the time the writ comes to the hands of the officer to be executed, where the judgment or decree does not constitute a lien upon the property. So far as this statute is concerned, there is no good reason why an execution coming to the hands of the sheriff in the lifetime of the defendant, might not be levied and enforced against his personal property after his death, without a revival of the judgment against his executor or administrator. This would be consistent with so much of the common law rule as stands unchanged by this statute. See *Collingsworth vs. Horn,* 4 *Stewart & Porter* 237. *Fryer ad. vs. Dennis,* 3 *Ala. R.* 254. *Caperton vs. Martin,* 5 *Ala.* 217. *Boyd ad. vs. Dennis,* 6 *Ib.* 55. *Abercrombie vs. Hall, Ib.* 657. *Hanson vs. Barne's Lessee,* 3 *Gill & John.* 359. *Center vs. Billingsgate,* 1 *Cowen* 34. *Styments vs. Brooks,* 10 *Wend.* 206.

But we think that such is the effect of our probate statutes upon the common law rule, that although a *fi.fa.* comes to the hands of the sheriff before the death of the defendant, and thereby becomes a general lien upon all his personal property, yet, inasmuch as it does not become a specific lien upon any particular property, until the officer makes a levy and seizes the property into his custody, the death of the defendant suspends the execution of the process, and it is not regular for the officer to make a levy and sell the property after his death. *The State Bank vs. Etter,* 15 *Ark. R.* 272. *Lessee of Massie's Heirs vs. Long et al.,* 2 *Ohio* 290. *Sweringen vs. Adr. of Eberius,* 7 *Mo.* 421. *Conkrite vs. Hart,* 10 *Texas* 140.

If, therefore, the execution in the case before us had been a *fi. fa.* against the goods and chattels, etc., generally of Mrs. Dobbins, we should not hesitate to hold that the Court below

committed no error in quashing the levy made by the sheriff upon her slaves after her death, and directing the property to be restored to her executor to be administered according to law, for the benefit of all her creditors, etc.

But in this case the decree, it seems, was a specific lien upon particular slaves named therein, which were condemned, by the terms of the decree, to be sold, as the separate property of Mrs. Dobbins, for the satisfaction of the debt adjudged against her and her husband by the decree. As to the slaves, it was a decree *in rem*, they being, as we must suppose, within the jurisdiction, and under the control of the Court when the decree was made. The execution was a special one, directing the sheriff to sell the particular slaves condemned to be sold by the decree. The decree was made, and the execution issued and placed in the hands of the sheriff before the death of Mrs. Dobbins. The lien thereby created would not have been made more specific than it was, if the execution had been levied upon the slaves before her death.

After the assignment of the widow's dower, the estate of a deceased person is subject to the payment of his debts in the order prescribed by the statute. *Dig. ch* 4, *sec.* 85. It may be seen that this statute gives no preference to a debt which constitutes a specific lien upon the personal property of the deceased. Yet it is well settled that if an execution be levied upon the goods of the defendant therein before his death, the officer may sell them after his death to satisfy the execution. The reason of this is, that by the levy and seizure, the officer acquires a special property in the goods, which are thereby detached from the general estate of the debtor, and do not constitute a part thereof for the purposes of administration in the event of his death after the levy, unless the debt is paid, and the property released by his representatives. *Arnett vs. Arnett et al.*, 14 *Ark. R.* 57. *Lessee of Massie's heirs vs. Long*, 2 *Ohio R.* 290. *Mundy's adr. vs. Bryan*, 18 *Mo.* (3 *Bennett*) 29. *Grosvenor vs. Gold* 9 *Mass.* 209. 10 *Yerg.* 328.

In the *State Bank vs. Etter*, *ubi sup.*, this Court intimated the opinion that even real estate might be sold after the death of

the defendant, if the execution was levied before his death, without reviving the judgment against his heirs, administrators, etc., and without probating it, if the sale was made under the execution in the hands of the sheriff at the time of the levy, etc.

As above remarked, the lien of the decree and order of sale in the hands of the sheriff, upon the slaves in this case, was as specific as if a levy had been made before the death of Mrs. Dobbins. The creditor had acquired, during her life, a vested right to have his decree satisfied out of the particular property named therein, in preference to her creditors generally, and her death did not divest this right. Her executor could have no claim upon these slaves for the payment of other debts, or legacies, until this decree was satisfied. And the process of execution having commenced in her life, and being, according to the common law theory, an entire thing, there can be no good reason why it may not have been completed after her death.

The judgment of the Court below is reversed, etc.

Mr. Justice HANLY, not sitting in this case.