## GOSSETT ET AL. VS. KENT ET AL.

The sheriff and collector, who sells lands for taxes, is not a proper party defendant to a bill in equity to set aside and cancel the deed to the purchaser—no relief being prayed as against him—and the objection may be taken by motion to dismiss as to him.

A deed to J. G. & Co. for land, only operates to transfer the legal title to J. G.

In cases of misjoinder of plaintiffs, the objection should be taken by demurrer.

When the assessment list is returned by the assessor, and the process of assessment is completed by the action of the County Court, it becomes in the nature of a judgment; and the warrrnt attached to the tax-book delivered to the collector is in the nature of an execution; and the condition of the lands—that is, as being lands of resident or non-resident owners—becomes fixed: and so, if a resident owner of lands become a non-resident after the delivery of the tax-book to the collector, the collector is bound to pursue the mode prescribed by the statute for the sale of the lands of resident tax-payers.

A tax deed is not void because it omits to recite that the collector demanded payment, etc., before levying on the land—if the fact of demand, etc., be put in issue, the omission of it in the recitals of the deed may be supplied by additional proof.

*Appeal from Hempstead Circuit Court in Chancery.*

Hon. SHELTON WATSON, Circuit Judge.

GARLAND, for the appellants.

WATKINS & GALLAGHER, for the appellees.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

John Gossett and Rowland B. Smith filed a bill in the Circuit Court of Hempstead county against John Kent and John B. Sandefur, alleging in substance as follows:

On the 30th of December, 1850, Elijah A. Bates purchased of the United States the N. W. of the S. W. and the S. E. of the S. W. quarters of section 8, T. 14 S., R. 23, W., situated in Hempstead county.

On the 18th of December, 1852, Bates and wife sold and conveyed said lands to complainants by description of John Gossett & Co.; at which time complainants were, and have ever since been, residents of Ouachita county.

That said lands were entered, listed and assessed for taxes, in Hempstead county, in the years 1851 and 1852, in the name of Bates; and that the defendant Sandefur, as sheriff of said county, on Monday the 16th of May, 1853, at the court-house door of said county, sold one of said tracts (the S. E. of the S. W. quarter) for the taxes, penalty and costs and charges then due on the said several tracts of land, amounting to $5 25, and the defendant Kent purchased the same, etc.

At the time of the sale Bates was not a resident of Hempstead county, and the defendant, Sandefur, on the 26th of May, 1853, and before the expiration of a year from the sale, and in violation of his duty as sheriff, etc., in that behalf, executed to the defendant, Kent, a deed for the tract of land so purchased by him,—a copy of which is exhibited.

That Kent and Sandefur well knew, at the time of the

**604**        CASES IN THE SUPREME COURT

Gossett et al. vs. Kent et al.        [January

sale, and at the time of the execution of the tax deed, that Bates nor complainants were residents of Hempstead county.

That Bates resided in Hempstead county in the years 1851 and 1852, or nearly all of 1852, and had personal estate whereof the said taxes, penalty, costs and charges could have been levied and made by the sheriff; and did not reside in said county at the time said land was so *advertised* and sold by Sandefur.

Complainants did not know, when they purchased the land of Bates, nor until after the tax sale to Kent, that there were any taxes, etc., due upon it, etc.

That the mercantile firm of John Gossett & Co. had been dissolved by mutual consent, and all the assets of the firm, real and personal, were the property and estate of complainant,

On the 4th of July, 1853, complainants tendered to Kent the amount of money paid by him for the land at tax sale, with one hundred per cent. thereon, and offered to redeem the land; exhibiting to him, at the same time, and requesting him to execute a quit claim deed to them, which he refused to do. They offer to bring the money into Court.

That the defendants knew at the time of the tax sale that the complainants had before then purchased the land of Bates, and that Gossett claimed the same.

That the deed made by Sandefur to Kent was fraudulent and void, and conveyed no title to the land.

Prayer that the tax deed be canceled, and that defendant Kent be required to execute to complainant Gossett a quit claim deed, etc., and for general relief.

At the return term (November, 1853) Kent answered the bill. He admits that Bates entered the land, and conveyed to complainants, as shown in the deed exhibited by them, but denies that such sale and transfer in any manner affected the lien created thereon by law for the taxes, or had any effect upon the right of the sheriff to sell the land for the payment of such taxes.

Admits that complainants were at the time they purchased

the land of Bates, and have since continued to be, residents of the county of Ouachita. That the land was listed and assessed for taxation, and taxed for the year 1852, in the name of Bates, who was, at the time the same was so listed, assessed and taxed, a resident of Hempstead county, and so continued until the latter part of the month of December of that year, when he removed to parts unknown.

Admits that he purchased the land at the tax sale made by the sheriff and collector, and took a deed therefor, a copy of which is exhibited with the bill, and avers that all the facts recited therein are true; and insists that the sale and deed vested in him a good and valid title to the land as against complainants and all other persons, and he pleads the same in bar of the relief sought by the bill.

He admits that Bates did not reside in Hempstead county at the time of the sale of the land for taxes, but he avers that Bates was a citizen of the county and resided therein during the whole of the year, 1852, up to, until and preceding the 18th or 19th of December, when he removed as before stated.

He also admits that he knew that neither Bates nor complainants resided in Hempstead county at the time respondent purchased the land at tax sale, and obtained the collector's deed therefor. That Bates resided in said county during the year 1851, etc., and respondent admits that whilst he remained in the county he had personal property whereof the taxes, penalty and costs could have been made, but denies that such was the case at the time the land was levied upon, advertised and sold, or at any time after he removed from the county in December, 1852.

Did not know what information complainant may have had in regard to the taxes, etc., due upon the land, but the law charged all persons with notice, etc.

Could not state what disposition complainants, or either of them, had made of their pretended interest in the land, but denies that either of them has any interest in the tract purchased by him, etc.

As to the alleged tender, etc., respondent states that in July, 1853, one of the attorneys of complainants enquired of him whether he would not relinquish the land to them, if they would pay him something more than he had paid for it; to which he replied, that, inasmuch as the improvements made thereon, by him, had been entered by Bates, he now intended to hold on to the land until he was dispossessed by law, or words to that effect. No deed was tendered to him to sign, nor any offer to redeem other than as above stated. But even if tender or offer to redeem had been made or deed presented, he would have refused to comply with such demand.

He states that he understood that Bates was about to run away, and complainants having a demand against him, sent up an agent, who took the land in payment of their debt, and on the next day thereafter, Bates removed from the county, taking with him all his property and effects; and so respondent admits that he had heard that complainants had purchased the land from Bates before he purchased it at tax sale, but he did not know that such was the fact until after the deed of complainant was filed for record in June, 1852.

That the land adjoined the tract on which respondent resided, he had extended his improvements upon it, intending to enter it when convenient, but that Bates, for the purpose of injuring and speculating upon him, had entered it, etc., thereby depriving him of his labor and improvements. Under these circumstances, ascertaining that the land was advertised to be sold for taxes, he attended the sale and purchased in good faith, believing that he thereby acquired a valid title, etc., and insisting that he could hold the land with a clear conscience under the circumstances. But for the improvements made upon the land by him, and its relation to his other land, he would scarcely have it as a gift, and would not have thought of bidding for it at the sale.

The answer also interposes a demurrer to the bill for want of equity, to be insisted upon at the hearing.

The defendant, Sandefur, moved to dismiss the bill as to him for the following causes:

1. There was no equity in the bill as to him.

2. No relief asked as to him, and none could be had, if asked.

4. He was made defendant in his official capacity.

4. If he had injured complainants, their remedy was complete in a court of law.

At the May term, 1854, the cause was heard upon the bill and exhibits, the answer of Kent, without replication, and the motion of Sandefur, and the bill was dismissed for the want of equity.

The complainants appealed from the decree to this Court.

1. The bill was properly dismissed as to Sandefur, no relief being prayed as against him. *Adams Eq.* 312, 314; *Edwards on Parties* 9.

2. Smith, it appears from the face of the bill, was improperly made a party complainant. It seems that he had no interest in the subject of the suit, and no relief was prayed for him. The deed from Bates to John Gossett & Co., only operated to transfer the legal title to the land to John Gossett. *Arthur vs. Weston*, 22 *Mo.* 378; 4 *Kent* 462; 20 *Maine* 420; *Jackson vs. Sisson*, 2 *Johnson's Cases* 321. If Smith took an equitable interest in the land, under the deed, it appears by the allegations of the bill that Gossett had acquired such interest, upon the dissolution of the firm, before the bill was filed.

In cases of misjoinder of plaintiffs, the objection should be taken by demurrer; for if not so taken, and the Court proceeds to a hearing on the merits, it will be disregarded, at least, if it does not materially affect the propriety of the decree. *Story's Eq. Pl. sec.* 544, *and note.*

3. The validity of the tax sale, made under the circumstances disclosed by the pleadings, is the only remaining question to be determined.

If the sale is to be treated as a sale of land belonging to a non-resident, it is void: because the law in force at the time, required lands " owned by and assessed to persons" not resid-

ing in the county, to be sold for taxes on the first Monday in November, unless the collector failed from some cause to sell on that day, and was empowered by an order of the county court, made on good cause shown, to sell on a subsequent day. *Dig.*, *chap.* 139, *sec.* 98, 129. Here, the pleadings, as well as the deed, show that the sale was made on the 16th of May, 1853, and it does not, in any way, appear that the county court had made any order in reference to the sale. See *Hogins vs. Brashears*, 13 *Ark.* 242.

But it is manifest from the deed, as well as from the pleadings, that the sale was made under the provisions of the statute applicable to the assessment and sale of lands owned by resident tax-payers. It sufficiently appears that Bates was a resident when the land was assessed, when the tax book (and process of sale) was delivered to the collector, and so continued until after the first Monday of November, 1852, the time then prescribed by law for selling lands assessed to non-residents for that year; though he removed from the county in the latter part of December following, and was a non-resident at the time of the sale, and perhaps when the collector advertised. Was the collector bound to take notice of his removal, shift the process of collection, and proceed to sell the land as if it had been owned by, and "assessed to," a non-resident?

The revenue system, as embraced in *chap.* 139, *Dig.*, contemplates two classes of tax-payers, the resident, and the non-resident, and provides a different and distinct mode of selling the lands of each for the non-payment of taxes.

The assessor is required to make out and return his assessment list in two parts, one containing the names of all persons residing in his county, and owning or holding taxable property therein; the other containing the names of all non-residents of the county, who own taxable property therein, *secs.* 8, 9, 10, 27. The assessor obtains a schedule of the property of the resident, and its value, by personal application to him, etc., *secs.* 13, 14, 15, 19; and he thereby has express notice that he is assessed. Other modes are prescribed for obtaining the schedule and

value of the land of the non-resident, *secs*. 20, 21, 22, etc. The assessor having so made out and returned the assessment list, notice is given of the return, so that all persons who deem themselves aggrieved by the assessment, may apply to the County Court, at the next term after it is returned, for the correction of errors, etc., *secs*. 27 *to* 30.

The County Court, after correcting any errors that may be made to appear in the assessment list returned by the assessor, causes to be stated thereon the State and county tax to be collected from the persons and property embraced in the list; and distinguished into the two classes above indicated, *sec*. 35. The process of assessment, thus completed by the action of the County Court, becomes, it is said, in the nature of a judgment. *Blackwell Tax Tit*. 199.

The tax book, which is but a copy of the assessment list, thus perfected, is then delivered to the collector, *secs*. 35, 36, attached to which is a process in the nature of an execution, *sec*. 40.

Upon the face of the tax book, as upon the assessment list returned, is designated the two classes of tax-payers, the resident and the non-resident.

The process of execution thus commenced (*Davis vs. Oswalt Ex.*, 18 *Ark*. 414), is to be completed in reference to the two classes of tax payers, by the distinct modes prescribed by the statute.

Before a levy can be made upon the lands or goods of the *resident*, payment of the taxes must be demanded of him, or the collector must visit his place of abode for that purpose, *sec*. 49; and before his lands can be sold, there must be a want of personal property, *sec*. 92. The *resident* failing to pay the taxes charged upon his lands, or lands assessed to him, and having no sufficient personal property, etc., the collector proceeds to levy upon and sell the lands, as under execution issued from the Circuit Court, and to make the purchaser a deed; and there is no redemption of the lands provided for, *secs*. 90, 91, 92, 93. The sale is absolute and final, and if the proceedings

39

are regular, the title is as valid as if acquired in any other mode known to the law.

On the other hand, in reference to the other class of tax-payers it is made the duty of the collector, on or before the 15th of September, (if the taxes be not paid before then,) to make out and return to the office of the clerk of the county court, a list of all lands, etc., owned by and assessed to non-residents, etc., setting forth the owners' names, the taxes due thereon, etc., etc., *sec.* 95; and to publish a copy of such list in a newspaper, etc., four weeks before the first Monday of November, etc., *secs.* 96, 97; and upon that day to sell the lands, etc., *sec.* 98. The collector executes to the purchaser a certificate of purchase, *sec.* 106. The owner has twelve months from the time of sale to redeem the land, *sec* 111; and if not redeemed within that time, the collector executes to the purchaser a deed, *sec.* 108; and the right of redemption is gone, and the title of the purchaser becomes absolute and valid, if the proceedings be regular.

In the case before us, the land was not assessed to a non-resident, but a resident, as above shown. Bates continued to be a resident of Hempstead county until the time for returning the list, advertising and selling the lands of non-residents had passed. If the collector was bound to take notice of his removal, and proceed against his land as if assessed to a non-resident, the sale would have been greatly delayed.

The collector had time, no doubt, after the tax book came to his hands, and before the removal of Bates, to have levied upon, and made the taxes due upon the land out of his personal property. But he was not absolutely bound to do so. The law does not specify the particular time when the collector shall levy upon, or sell the land of the resident tax-payer, otherwise than in the general terms, that he shall sell as if under execution from the Circuit Court. When the tax book is delivered to him, he is charged with the amount of taxes to be collected, and if he fails to collect the tax due upon the lands of any tax-payer before he is required to make his settlement, and pay

over the revenue, he can pay the tax himself, and sell the land afterwards, to re-imburse himself. *Sec.* 88; *also Acts of* 1848, *p*. 30.

If the collector had to tack about and shift his proceedings, whenever a resident left the county, or sold his land to a non-resident (see *sec.* 89), or whenever a non-resident came into the county, very great delay, confusion and inconvenience would often be the result. The collector would be under the necessity of watching after the locality of the tax payers, and tax sales would be subject to be defeated by the mere contingency of a change of residence without the knowledge of the collector.

If a resident leaves the county without making provision for the payment of taxes charged upon his land, and of which he is supposed to have notice by personal assessment, he cannot complain if his land be sold without the right of redemption.

If non-residents have any fears that their lands may be improperly placed in the residents' list, and sold without the right of redemption, let them see to the assessment list when it is returned, and if an error has occurred, let them apply to the County Court at the time fixed by the public law of the land for that purpose, and cause the error to be corrected.

The result is that we hold the sale in this case not to be void.

The tax deed contains the recitals usually embraced in the collector's deed upon the sale of the land of a resident, except that it fails to recite that the collector demanded payment of the taxes of Bates, or visited his place of abode for that purpose, before levying upon the land. But the deed was not necessarily void on that account. Where the proceedings for the condemnation and sale of land for the non-payment of taxes are in fact regular, and in accordance with the statute, the law vests the title in the purchaser; and the collector's deed is the evidence of his title. In a proceeding where the purchaser relies upon the deed to show title to the land, if the deed contains recitals showing a substantial compliance with such provisions of the statute as is required to make a valid sale, the deed is prima facie evidence of the regularity of the sale and title, and

the burthen of proof is upon the party attacking the sale. *Merrick & Fenno vs. Hutt*, 15 *Ark*. 334. In other words, the recitals in a collector's deed are to be taken as true, as far as they go, until rebutted.

If this were a suit for the land by Kent, the collector's deed would be *prima facie* evidence that the proceedings were regular except in the matter of demand. The deed does not show that there was no demand, etc., but merely omits to show that there was. He would have, therefore, to supply, by additional proof, this omission in the recitals of the deed. If he were not permitted to make this additional proof in aid of the deed, although the collector might in point of fact have made the demand, or gone to the abode of Bates for the purpose, yet Kent would fail to recover, and lose the land by the mere failure of the collector to recite a fact in the deed. See *Jordan vs. Bradshaw*, 17 *Ark*. 106.

But here the suit was brought by Kent. The complainants filed a bill to cancel his tax deed, on the ground that it was void—that the sale was made as if the land was owned by a resident, when it belonged to a non-resident. The bill made no allegation in reference to the demand—did not put Kent upon his answer as to that, or in any way put it in issue, so as to afford him an opportunity of making proof in aid of the recitals of his deed. The objection to the deed seems to have been made for the first time, in the argument here, when the time for making proof had passed.

The judgment is affirmed.

NOTE.—The Hon. C. C. SCOTT, J., announced that he dissented from the opinion of the Court in this case: but he has failed to file a dissenting opinion.