St. Louis Southwestern Railway Company *v.* Grayson.

Opinion delivered January 9, 1904.

1.  Levee Act—construction.—Acts 1901, p. 27, establishing a drainage and levee district, and providing that it shall include the "track and roadbed" of a certain railway, includes the right of way of such railway. (Page 124.)

2.  Same—special legislation.—Acts 1901, p. 27, establishing a special drainage and levee district, is not in violation of the provision in art. 5, § 25, Const. 1874, against special legislation, as the determination of the question whether a special act is necessary is a matter within the discretion of the legislature. (Page 125.)

3.  Same—suspension of general law.— Acts 1901, p. 27, establishing a drainage and levee district, does not suspend the general law on the subject of drains and ditches contained in Sand. & H. Dig. § § 1203, 1222, and is not therefore within the prohibition of Const. 1874, art. 5, § 25. (Page 125.)

4.  Same—special and general acts.—Acts 1901, p. 27, establishing a special drainage and levee district, was not repealed by the general act of April 23, 1903 (Acts 1903, p. 278), the presumption being that a general act does not repeal a prior special act, though the general act contains a clause repealing all acts inconsistent with it, where it does not appear that the later general act was intended to contain all the law on the subject. (Page 125.)

5. Same—day in court.—Acts 1901, p. 27, creating a levee and drainage district, is not unconstitutional for failure to provide that interested parties may have a day in court to ascertain whether property included in the district would be benefited by the improvement. (Page 125.)

6. Pleading—demurrer.—Where, in creating a drainage and levee district, the legislature fixed the boundaries thereof, and determined that the roadbed of a certain railway should be assessed, the allegation of a complaint seeking to enjoin the collection of the tax on such railway that it would not be benefited by the improvement was not admitted by a demurrer. (Page 127.)

Appeal from Greene Chancery Court.

Edward D. Robertson, Chancellor.

Affirmed.

Suit by the St. Louis Southwestern Railway Company against Addison Grayson, collector of taxes. The facts are stated by the court as follows:

STATEMENT BY THE COURT.

The General Assembly of the State of Arkansas, at its session held in 1901, page 27 of Acts of 1901, passed an act establishing a drainage and levee district. The first section is as follows:

"Section 1. That all portion of the territory of Clay and Greene counties lying east of the St. Louis Southwestern Railway, including the track and roadbed of said railway, and west of the St. Francis river, and north of the southern boundary line of township eighteen north, be established and constituted a drainage and levee district for the purpose of maintaining the levee now in existence in said territory."

Section 11 reads as follows: "There shall be levied and collected, and the same is hereby levied, on all the lands subject to taxation in said drainage and levee district for the year 1901, five mills on each dollar of the assessed value of said lands for the said year for state and county purposes, which levy or tax shall be by the clerks of said counties of Clay and Greene, respectively, extended upon the tax books, for said year, in making out and preparing the same, and the same shall be collected by the collectors of said counties, respectively, at the time of collection of

state and county taxes, and of said amount the sum of one mill, or so much thereof as shall be necessary, shall be expended in said levee, and the remainder shall be expended in collecting and maintaining said ditch, and said collectors shall settle with said boards as to the amount collected by them, respectively, and pay the same over to the treasurer of the board upon its order."

Section 12 reads as follows: "If the amount assessed for the year 1901, under the above section, shall not be sufficient to complete and maintain said ditch and levee, said board shall have power to levy such amounts from year to year as they may think proper, not to exceed five mills on the dollar of the assessed value of the land in said district, which shall be placed on the tax books, collected and accounted for, and paid over as is directed by the preceding section. *Provided,* the taxes of each year shall be levied and assessed and filed in the clerk's office of the counties of Clay and Greene in time for the clerk to enter the same on the tax books for each year the same may be levied or assessed."

Under the provisions of this act the clerk of Greene county extended against the right of way, roadbed, track, ties and trestles in Greene county, in 1901, a tax of five mills on the dollar of the assessed valuation of the same, north of township eighteen, aggregating about $303. On the 4th day of April, 1902, the railway company filed a complaint in the Greene county chancery court against the appellee, Addison Grayson, and alleged that it was a railway company; that it owned and operated a railway line through Greene county; that its line of road had been duly assessed, and that state, county, school and road taxes had been duly extended against it, which sum it would pay; that the clerk had indorsed a warrant on the collector's books authorizing and directing him to collect state, county, school, road and ditch and levee taxes; that the property was not liable for the levee and ditch taxes; that the act under which they were levied was unconstitutional and void, and that an attempt to enforce the same was in violation of article 14, section 1, of the constitution of the United States, and an attempt to take property without due process of law; that neither the construction of the levees mentioned, nor the digging of the ditches and drains mentioned, nor the maintenance of either would in any way benefit the plaintiff, or its property (the roadbed, right of way or tracks mentioned), either

directly or indirectly; that the levees provided for and mentioned did not come within four miles of any of its property or of its right of way; that the ditch or drain provided for in said act did not run within two miles of its roadbed or right of way and tracks; and that the tax levied was excessive; and prayed for an injunction enjoining the collector from collecting any part of the tax levied for ditch and levee purposes.

The commissioners appointed to carry out the purpose of the act were made parties, and they, with the collector, filed an answer and cross bill, in which they alleged that the tax assessed under the drainage act against all property within the territory in Greéne county aggregated $651: that the plaintiff was liable for $303 of that sum; and prayed for judgment for the same.

After the answer and cross bill were filed, by consent, a demurrer was filed to the complaint upon the ground that it did not state facts sufficient to entitle the appellant to the relief for which it prayed.

Upon a hearing the court sustained the demurrer, plaintiff elected to stand upon its complaint, and the same was by the court dismissed at appellant's costs, and judgment rendered in favor of the appellee for the sum of $303.24, from which an appeal was taken.

*Samuel H. West* and *J. C. Hawthorne,* for appellant.

It was not the legislative intent that taxes be extended against the railway property.   64 Ark. 432.   The act under which the levy of taxes is extended, in so far as it attempts to provide for the construction and maintenance of ditches and drains, conflicts with § 25, art. 5, Const. 1874, and is invalid.   36 Ark. 177; 20 Oh. St. 18; 2 Dill. 353.   The act of February 16, 1901, in so far as it provides for the construction of ditches and drains, was repealed by the act of April 23, 1903.   57 Ark. 508; 50 Ark. 132; 43 Ark. 364; 28 Ark. 317; 31 Ark. 17.   The act, by making a direct levy of taxes and not giving the interested party a day in court, contravenes the bill of rights.   Const. 1874, § § 13, 21, 23, 29, bill of rights.   As to liability of railroad company for local improvements, see 68 Ark. 380; Welty, Assessment, § 142.   Property in no wise benefited by local improvements cannot be assessed.   3 Wend. 452; 11 Wend. 149; 69 Pa. St. 353; 18 N. J. 518; 65

Pa. St. 446; 34 Ill. 203; 62 Ill. 427; 37 N. J. 415; 9 Cush. 233; 40 Wis. 315; 3 N. W. 35; 44 Vt. 174; 7 Cush. 277; 69 N. Y. 506; 64 N. Y. 91. The legislature is not the sole judge on the question of benefits. 181 U. S. 324; 182 Mass. 232.

*R. E. L. Johnson, W. S. Luna* and *Rose, Hemingway & Rose,* for appellee.

The presumption is in favor of the constitutionality of an act. 32 Ark. 131; 11 Ark. 481; 36 Ark. 171; 39 Ark. 353. The words "roadbed and track" include right of way. 48 N. W. 1040, 1041; 3 Bush, 648. See also Sand. & H. Dig. § 6468, 6471. *Cf.* 68 Ark. 376. The word "track," as used in the later act relating to assessment of railroad property, must be taken to have been used in the same sense as in the previous revenue statute, the acts being *in pari materia.* Endlich, Int. Stat. § § 43, 368; 8 How. 516; 137 U. S. 686; 18 Wall. 301; 47 Fed. 136. Since no method is provided in the later statute whereby the value of the right of way or any part of it can be segregated and omitted from the total valuation of the railroad property, and the value of the residue ascertained, such a construction would render the statute nugatory, and cannot be indulged. 11 Ark. 44; Endlich, Stat. § § 264, 265. Appellant is not in a position to complain of the excess in its assessment until it has paid what is justly due. 92 U. S. 613; 21 Fed. 826; 121 U. S. 551; 153 U. S. 252. The matters covered by the statute were within the legislative discretion. 35 Ark. 73; 48 Ark. 371; 66 Id. 576. The act of 1891 (p. 282) does not repeal or affect Sand. & H. Dig. § § 1203-1232. Nor is the act of 1891 repealed by the later general act of 1903 (p. 278). 50 Ark. 137; Endlich, Int. Stat. § 223; 53 Ark. 339; 88 N. W. 117; 29 Ark. 237. The assessment provided for in the act is made upon the basis of the assessed value of the lands for that year for state and county purposes, and the property owner has his day in court at the time of the making of this assessment. 52 Ark. 529; 19 Ark. 602; Welty, Assessments, § 20. However, when a direct assessment, fixed in amount, is made by the legislature, no notice is required, as in the case of an *ad valorem* assessment of property made by some other agency of the state. 170 U. S. 45; 111 U. S. 701; 170 U. S. 304, 311; 100 N. Y. 585; 125 U. S.

345. See, generally, upon legislative power to authorize *ad valorem* assessments for special purposes. 164 U. S. 176; 181 U. S. 324; 170 U. S. 45; 172 U. S. 269; 143 U. S. 546; 167 U. S. 589; 97 U. S. 687, 682; 182 Mass. 232. The burden is on the party attacking the act to show that the legislature transcended its powers. 56 Ark. 528, 584. The presumption is in favor of the proper and correct exercise of its powers by the legislature. 52 Ark. 107; 55 Ark. 532; 170 U. S. 55; Cooley, Taxation, 48, 64; 29 Wis. 400; 30 Atl. 43; 41 N. Y. 140; 58 Pa. St. 320; 68 S. W. 964; Welty, Assessments, § 250, p. 402.

Hughes, J. (after stating the facts). The defendants contend that the act levying this tax (Acts 1901, page 27) is not broad enough to be construed to include the right of way; that the words "including the track and roadbed of said railroad," as used in the first section of said act defining the boundaries of said district, do not include the real estate or right of way. We are of the opinion that the words the "roadbed and track," as used in the said first section, were intended by the legislature to, and do, include the right of way. The statute of this state relating to the assessment and valuation of railroad property for taxation provides as follows:

"Sec. 6468. Such person, company or corporation shall also state the fair and actual aggregate value of the whole railroad, taking into consideration, in estimating and fixing such value, the entire right of way, as given by the charter of the company or statutes of the state; and also taking into consideration and estimating everything of any character whatever situated upon such right of way, and appurtenant to such railroad, which adds to the value of such railroad as an entire thing."

"Sec. 6471. Such railroad * * * shall be held to be real estate for the purposes of taxation, and denominated 'railroad track,' * * * and when advertised and sold for taxes, no other description will be necessary." Sand. & H. Digest.

The statute having provided that railroads shall be assessed and taxed as a whole, and not having in this instance provided any other mode of assessment, we must conclude that the first section of the act under consideration was intended by the legislature to include the right of way, and that its assessment was therefore proper.

The law treats a railroad and its appurtenances as one entire thing. *Applegate* v. *Ernst,* 3 Bush, 648. A part of a railroad cannot be sold under execution. *Kansas City, P. & G. Ry. Co.* v. *Waterworks Imp. Dist.,* 68 Ark. 379, 59 S. W. 248.

The appellant contends that the act is invalid because the same result could have been accomplished by a general act. But whether a special act is necessary is a matter within the discretion of the legislature. *Byrd* v. *Bryant,* 35 Ark. 73; *Davis* v. *Gaines,* 48 Ark. 371; *State* v. *Sloan,* 66 Ark. 579, 53 S. W. 47.

It is said that the act of 1901 suspends the general law as contained in sections 1203-1232, Sandels & Hill's Digest, in relation to drains and ditches. The act of 1901 was passed for the purpose of maintaining a levee and constructing a ditch. This act of 1901 does not exactly cover the same purpose of the former statute, and we think was not intended to, and does not, suspend the former in Sandels & Hill's Digest.

It is also contended that the act of 1901 has been repealed by the act of 1903 relating to the reclamation of lands by the construction, strengthening, widening, altering, or deepening of any ditch, drain or water course. The act of 1901 is a special act, and the act of 1903 is a general act, and it is held that the presumption is that a general act was not intended to repeal a prior special act, even though the general act contains a clause repealing all acts inconsistent with it. *Chamberlain* v. *State,* 50 Ark. 137; Endlich, Int. Stat., § 223 *et seq.* There does not seem to be any intention in the act of 1903 that it shall contain all the law on the subject of the act. *State* v. *Kirk,* 53 Ark. 339; *Kounts* v. *Omaha* (Neb.), 88 S. W. 117.

Counsel for appellant say that "the act does not provide for an interested party to have a day in court." The act provides for the assessment to be made upon "the assessed value of said lands for said year for state and county purposes." The assessment for state and county purposes is made by the board of railroad commissioners, and, according to *St. Louis, I. M. & S. Ry. Co.* v. *Worthen,* 52 Ark. 529, the railroad company had its day in court, and no other notice was necessary, and this though no appeal from the decision of the board is provided for. When the assessment is made by the board of railroad commissioners, it is considered in the nature of a judgment, which the railroad company

is estopped to question. *Gossett v. Kent,* 19 Ark. 602; Welty on Assessments, § 20, note 3, and cases cited.

The legislature has full and complete power of legislation, except as prohibited by the constitution of the state, or the constitution of the United States. In *Williams v. Eggleston,* 170 U. S. 304, 311, it is said: "Neither can it be doubted that, if the state constitution does not prohibit, the legislature, speaking generally, may create a new taxing district, determine what territory shall belong to such district, and what property shall be considered as benefited by a proposed improvement. And in so doing it is not compelled to give notice to the parties resident within the territory or permit a hearing before itself, one of its committees, or any other tribunal, as to the question whether the property so included within the taxing district is in fact benefited."

In *Spencer v. Merchant,* 125 U. S. 345, Mr. Justice Gray said, in affirming the judgment of the New York court, that "the legislature may commit the ascertainment of the sum to be raised and of the benefited district to commissioners, but is not bound to do so; and may settle both questions for itself; and when it does so, its action is necessarily conclusive and beyond review. * * * No hearing would open the discretion of the legislature, or be of any avail to review or change it. * * * The judicial department cannot prescribe to the legislative department limitations upon the exercise of its acknowledged powers." See also *Fallbrook Irrigation District v. Bradley,* 164 U. S. 176; *McGehee v. Matthews,* 21 Ark. 40; *Carson v. St. Francis Levee District,* 59 Ark. 528; *Parsons v. District of Columbia,* 170 U. S. 55.

Judge Cooley in his work on Taxation says: "The whole subject of taxing districts belongs to the legislature. So much is unquestionable. The authority may be exercised directly, or, in case of local taxes, it may be left to local boards or bodies. * * * If the legislature has fixed the district, and levied the tax, for the reason that in the opinion of the legislative body such district is plenteously benefited, its action must, in general, be deemed conclusive." Again at page 53 he says: "The clause recited from the Magna Charta does not imply the necessity for judicial action in every case in which the property of the citizen may be taken for public use. On the contrary, a legislative act for that purpose, when clearly within the limits of the legislative authority, is of

itself the law of the land. And an act providing for the levying of taxes and the means of their enforcement is, as we have seen, within the unquestioned and unquestionable power of the legislature. It is therefore the law of the land, not merely in so far as it lays down a general rule to be observed, but in all the proceedings and all the process which it points out or provides for in order to give the rule full operation."

The complaint states that the lands of the plaintiff will not be benefited by the improvement, and the contention seems to be that the demurrer admits this to be a fact. But this is not admitted by the demurrer. "Nor does a demurrer admit allegations which are legally impossible or contrary to legislative enactment, or which the law does not allow to be proved." 6 Enc.. Pleading and Practice, page 338.

The decree of the chancellor is in all things affirmed.