## BENNETT *v.* JOHNSON.

### Opinion delivered October 22, 1917.

1. ROADS—LANDS IN SEVERAL COUNTIES—CREATION OF DISTRICT.—The Legislature has authority to create a road improvement district embracing land in more than one county, to improve a defined, and already existent public road, situated in more than one county.

2. ROADS—THROUGH INCORPORATED TOWNS.—The Legislature may create a road district, and authorize the commissioners to improve the road through an incorporated town.

3. ROADS—SEVERAL COUNTIES—COMMISSIONERS.—Act 265, page 1366, Acts 1917, created a road improvement district, the road running through several counties, and the district embracing land in several counties; *held,* the Legislature had authority to appoint commissioners to do the work of making the improvement from residents of the various counties, where each locality comprising the district is represented on the board.

4. LOCAL IMPROVEMENT—TEST—ROAD IN SEVERAL COUNTIES.—In order for an improvement to be treated as a local one, there must be peculiar benefits derived from its construction in excess of those enjoyed by the public; the size of the district is not decisive. The road improvement district created by Act 265, page 1366, Acts 1917, comprising lands in several counties, *held* to constitute a single local improvement, resulting in special benefits to the lands to be taxed, justifying the taxation of those lands to pay for the construction of the improvement.

5. ROADS—CREATION OF DISTRICT—DUPLICATING DESCRIPTION OF CERTAIN. LANDS.—Act 265, Acts 1917, is not invalid, because, in describing the lands composing the district, it duplicates the description of certain tracts.

6. ROADS—IMPROVEMENT OF LANDS EMBRACED IN ANOTHER DISTRICT.—Section 36, Act 265, Acts 1917, creating a road improvement district, permits another road improvement district to improve a part of the roads to be improved under Act 265, *held*, such fact did not invalidate Act 265.

Appeal from Desha Chancery Court; *Zachariah T. Wood*, Chancellor; reversed.

*Rose, Hemingway, Cantrell, Loughborough & Miles*, for appellant.

1. The Legislature can do anything not prohibited by the Constitution, and all presumptions are in favor of the validity of an act.

The Legislature can create an improvement district embracing lands in more than one county. 89 Ark. 513; 92 *Id*. 93; 102 *Id*. 560; 104 *Id*. 429; 120 *Id*. 277; 125 *Id*. 329; 96 *Id*. 410.

2. It can provide for the appointment of commissioners who are not residents of the county where a part of the road is to be improved. The Legislature is supreme and the Constitution does not prohibit it. 96 Ark. 410.

3. It can authorize road commissioners to improve that part of the road that passes through the towns. 120 Ark. 277; 118 *Id*. 119, etc.

4. The fact that the act, in describing the lands composing the district, duplicates the description of some tracts, does not invalidate it. Mere clerical or typographical errors are immaterial.

5. Section 36, which permits another road district to improve a part of the roads, does not affect the validity of the act. 113 Ark. 369; 121 *Id*. 16; 90 *Id*. 29; 97 *Id*. 334; 125 *Id*. 329.

6. The district is a local improvement district within the meaning of the Constitution, due process of law clause. 172 U. S. 269; 181 *Id*. 324, 341; 164 *Id*. 112; 170

*Id.* 304; 170 *Id.* 45; 59 Ark. 513; 72 *Id.* 119; 81 *Id.* 564; 70 *Id.* 451; 96 *Id.* 410, 416-17; 104 *Id.* 425; 98 *Id.* 113, 117.

7.　The territory of the district is adjacent, compact, contiguous and continuous.　90 Ark. 29; 118 *Id.* 119; 122 *Id.* 191; 116 *Id.* 167.　See, also, 120 Ark. 230; 105 *Id.* 380; 126 Ark. 416.

*E. E. Hopson,* for appellees.

1.　The act is unconstitutional and void, because in direct violation of article 7, section 28, Constitution of Arkansas.　89 Ark. 513; 92 *Id.* 93; 118 *Id.* 294.

2.　A local improvement district must be composed of adjacent, compact, contiguous and continuous territory.　118 Ark. 119; 126 Ark. 416; 122 Ark. 419; 116 *Id.* 167; 120 *Id.* 230; 105 *Id.* 380.

3.　The fact that the act duplicates the description of some of the lands invalidates it, because it can not be said what the intention of the Legislature was in this double description.

McCULLOCH, C. J.　The General Assembly of 1917 enacted a special statute creating the "Arkansas-Louisiana Highway Improvement District,"* for the purpose, as the name implies, of improving certain public highways running through the counties of Lincoln, Desha, Drew, Chicot and Ashley to the Louisiana State line, and appellees, who own real estate within the boundaries of said district, challenged the validity of said statute and instituted this action to enjoin the commissioners from proceeding under its terms.　The chancery court sustained the contention of appellees as to the unconstitutionality of the statute and rendered a decree in their favor restraining the commissioners from proceeding under the statute, and an appeal has been prosecuted to this court from that decree.

The lands included in said district consist of more than 600,000 acres lying contiguous to the roads to be constructed, and composing parts of each of the counties specified above.　The roads to be constructed are in the

---

*Act 265, p. 1366, Acts of 1917.　(Rep

aggregate approximately 150 miles in length, and run. through each of the counties named. The main stem, if that term may be used in describing the road, runs from a point near Varner in Lincoln County to a point near McGehee in Desha County, following the line of the railroad of the St. Louis, Iron Mountain & Southern Railway Company, passing through the towns of Varner, Dumas, Winchester and other towns along the route. The road then forks at McGehee, and one prong runs southwesterly, substantially parallel with the line of road of the said St. Louis, Iron Mountain & Southern Railway Company, through the towns of Blissville, Morrell, Portland, Parkdale, Wilmot, and other towns, ending at the southern boundary line of the State, near the town of Cypress; and the other prong runs southeasterly from McGehee, substantially parallel with the line of road of the Memphis, Helena & Louisiana Railway Company, through the towns of Trippe, Halley, Lake Village, Eudora, and other towns, and ends at the southern boundary line of the State near the town of Arkla. Another road runs east from Trippe to Arkansas City, the county site of Desha County, and another runs east from the town of Dermott on the line of the St. Louis, Iron Mountain & Southern Railway Company to the town of Halley on the Memphis, Helena & Louisiana Railway. All of these roads are described in said statute as being public roads as now established by the county courts of the respective counties, or as they may be changed by the said county courts for the purpose of straightening the roads before the construction of the improvement. The lands in the district are accurately described in the statute by sections, but there is an error in the statute in that a number of sections are duplicated in the description. The statute provides, in substance, that there shall be ten commissioners of the district; two of them to be appointed by the county court, or the judge in vacation, of each of said counties; that the board of commissioners shall form plans for the construction of the roads, said plans first to be submitted to and approved by the State Highway Department, and then to

be submitted to and approved by the county courts of each of said counties, so far as concerns the roads in each of the respective counties; and that when the plans have been so approved and adopted, and the cost of the improvement ascertained, there shall be an assessment of benefits to the lands included in the district, and that the cost of constructing the improvement shall be assessed against said lands in proportion to the benefits to be derived. There is also a provision in the statute to the effect that if it is ascertained that other lands not embraced in the district are found to be specially benefited by the improvement, the county court of the respective counties in which said lands lie may, upon petition of the board, and after due notice is published, make orders including such lands in the district. There is the usual provision for the issuance of bonds and for the enforcement of assessments against the lands in the district.

Counsel in the case agree that the attack upon the validity of the statute involves a consideration of the following points:

*First.* Can the Legislature create a road improvement district embracing land in more than one county to improve a defined public road situated in more than one county?

*Second.* Can the Legislature authorize the commissioners to improve the road through towns?

*Third.* Can the Legislature appoint commissioners who are not residents of the county where a part of the road is to be improved, and give them authority to improve the road in that county according to plans approved by the county court of that county?

*Fourth.* Does the project constitute a single, local improvement, and result in special benefit to the lands to be taxed, so as to justify taxation of those lands to pay for construction of the improvement?

*Fifth.* Does the fact that the act, in describing the land composing the district, duplicates the description of some tracts, invalidate the act?

*Sixth.* Does the fact that section 36 of the act permits another road improvement district to improve a part of the roads to be improved under this act affect the validity of the act?

The points will be discussed and determined in the order stated by counsel.

1.  The first point involves little difficulty, for county and other municipal lines are not taken into account in the formation of local improvement districts, the question being whether or not the project constitutes a single local improvement, regardless of its particular relation to such boundary lines.  There is no express limitation in the Constitution upon the creation of improvement districts, except as to those situated wholly within cities and towns, and we have held that the constitutional provision has no application to districts situated partly inside and partly outside of cities and towns.  *Butler* v. *Fourche Drainage Dist.,* 99 Ark. 100.  The power to include parts of two counties in an improvement district seems to have been definitely settled by this court in the case of *Shibley* v. *Fort Smith & Van Buren District,* 96 Ark. 410, where we upheld the validity of a district organized to construct a bridge across the Arkansas river where it forms the boundary line between Sebastian and Crawford counties, and which included lands in both of those counties.  Counsel for appellees argue that there is a distinction between that case and the present one in that the former involved the erection of one bridge which connected the two counties, and that the lands in each county were assessed according to benefits, to pay its part on the bridge, whereas in the present case the roads run through different counties, and the effect is to tax the lands in one county to construct the road in another.  We do not, however, think that the distinction sought to be made by counsel is to be found in the two cases, for the construction of all the roads constitutes a single improvement; at least, they must be so treated if the statute is to be upheld at all, and the taxes are levied on the lands in the several counties for the purpose of contributing to the expense as a whole,

and not to any particular part of the road. The statute in question does not invade the jurisdiction of the county court by taking from that court the control of the roads of the county, or by compelling the county court to accept as a public road one improved by the district, as in *Road Improvement District No.* 1 v. *Glover,* 89 Ark. 513; for the statute under consideration only provides for improvement of public roads already established and subject to change by the county court, and we have held that the creation of improvement districts for such purposes does not invade the jurisdiction of the county court. *Parkview Land Co.* v. *Road Imp. Dist. No.* 1, 92 Ark. 93; *Road Imp. Dist. No.* 2 v. *Winkler,* 102 Ark. 560. Nor is the statute open to the objection found to exist in the district dealt with by this court in the case of *Swepston* v. *Avery,* 118 Ark. 294, where substantially the whole of a county was placed in a road district with authority conferred upon the commissioners to improve any of the roads and to assess the cost on the lands of the county in equal proportion. Here the assessments are to be levied upon actual benefits ascertained by the assessors appointed for that purpose, and the land owners are given an opportunity to be heard on the question of the amount of the assessment. The statute is, therefore, not open to the objection stated in the above inquiry.

2. Nor is there any valid objection on the ground that the plan is to improve roads passing through incorporated towns. This objection has been answered by the court in other decisions. *Cox* v. *Road Improvement Dist. No.* 8 *of Lonoke,* 118 Ark. 119; *Nall* v. *Kelley,* 120 Ark. 277. The improvement under those circumstances does not constitute an invasion of the authority of the municipalities, nor does it offend against the constitutional provision with respect to improvements in cities and towns. See *Butler* v. *Fourche Drainage District, supra.*

3. We can discover no valid reason for holding the statute to be objectionable on the ground that roads in one county are to be constructed under the supervision of commissioners, some of whom are residents of other coun-

ties. The Constitution does not, as before stated, contain any regulation concerning improvement districts outside of cities and towns, nor in cities and towns as to the particular mode of constructing the improvement, except that where the district lies wholly within a municipality the consent of the majority of the property owners in value must be obtained. *Craig* v. *Russellville Waterworks Improvement Dist.,* 84 Ark. 390. The district is treated as an entirety regardless of intersecting county lines and the board of commissioners represent the district, and not any particular portion of it. Therefore, it can not be truly said that the commissioners are nonresidents of the county in which the work is to be done because they all represent the whole district. It is within the power of the Legislature to distribute the appointments so as to give each locality representation on the board. This attack on the validity of the statute is, therefore, unfounded.

4. The question whether the proposed improvement constitutes a single one, and is local in its nature, so as to justify special taxation, is a matter of serious concern, for this court has never had to deal with an improvement district covering a project of such magnitude. However, there are applicable principles well settled by the decisions of this court. We have said that a legislative determination on this question in creating an improvement district is conclusive unless that determination is found to be arbitrary and without foundation in reason. *St. L. S. W. Ry. Co.* v. *Grayson,* 72 Ark. 119; *St. L. S. W. Ry. Co.* v. *Board of Directors,* 81 Ark. 564; *Moore* v. *Bd. Dir. of Long Prairie Levee Dist.,* 98 Ark. 113; *Shibley* v. *Ft. Smith & Van Buren Dist., supra; Board of Directors* v. *Collier,* 104 Ark. 425. The Supreme Court of the United States has in its decisions accorded the same degree of conclusiveness to a legislative determination in creating improvement districts. *French* v. *Barber Asphalt Paving Co.,* 181 U. S. 324. We have held, too, that the fact that the public at large enjoys benefit from an improvement is no reason why it may not constitute a local improvement within the legal meaning of that term if the

property in the locality receives peculiar benefits in excess of that enjoyed by the public. We applied that principle to the construction of a bridge in the Shibley case, *supra,* where we said: ''A bridge for the use of the public, like a street in a city or a highway in the country, is undoubtedly of great benefit and convenience to the traveling public; nevertheless, it may be also of special benefit to adjoining lands and a fit subject for construction from the proceeds of local assessments. * * * The benefits need not be exclusive. The general public may also derive benefits in more remote degree, yet if there is a special and peculiar benefit inuring to the adjoining property, local assessments are justified.'' This court, in giving a definition of the phrase ''local improvement'' in the case of *Crane* v. *Siloam Springs,* 67 Ark. 30, said that it meant ''a public improvement, which, although it may incidentally benefit the public at large, is made primarily for the accommodation and convenience of the inhabitants of a particular locality, and which is of such a nature as to confer a special benefit upon the real property adjoining or near the locality of the improvement.'' It is difficult to lay down a test on this subject which may have invarying application to any state of facts, but one of the controlling principles is that in order for the improvement to be treated as a local one, there must be peculiar benefits derived from its construction in excess of those enjoyed by the public. The magnitude of the project or the extensiveness of the area involved, can have no decisive bearing on the question if the included area is to derive a special benefit apart from that enjoyed by the whole public. In other words, the size of the district presents only a question of degree in the enjoyment of the special benefits and is not necessarily decisive that the benefit is general in its results. We have here, it is true, a district comprising a large area covering a considerable portion of five counties, but those parts are grouped together into a solid area which may be peculiarly affected, and receive special benefits from the improvement. At least, we can not say as a matter of law that with that state of facts the

legislative determination is unreasonable and should be disregarded. Nor should we say that because the improvement consists of more than one road it can not be treated as a single improvement so as to be constructed under one organization and assessment of benefits. That is also a matter of legislative determination, and we must accept as conclusive the finding of the Legislature that this system of roads constitutes a single improvement, unless that finding is obviously and demonstrably erroneous. The decision in the case of *Conway* v. *Miller County Highway & Bridge District,* 125 Ark. 329, has direct bearing on this question, for we held there that the construction of several roads diverging from a common point might be treated as a single improvement. In *Wilson* v. *Blanks,* 95 Ark. 497, we said that after indulging the proper presumption with respect to the validity of the acts of a city council in creating an improvement district, it could not be said that the construction of waterworks and an electric light plant under one organization constitutes separate and independent improvements so as to invalidate the organization. So we hold in the present case that the conditions are not such as would justify us in disregarding the determination of the Legislature to the effect that the roads grouped together in this organization constitutes a single improvement of a local nature.

5.   The fact that an error was made in framing the statute whereby some of the land descriptions were duplicated can not in any view of the matter affect the validity of the statute. It is an obvious error which should be entirely disregarded in testing the validity of the statute. It can not be construed as an effort to tax the lands twice, and it does not operate as an exclusion of lands which ought to be taxed, or the inclusion of lands which ought not to be taxed. In other words, the duplication has no effect either upon the size of the district or the construction of the improvement, and, therefore, must be treated as immaterial.

6.   Section 35 of the statute provides that if any part of the roads named should be improved, by or through

any other agency, before this district can proceed with the work of improvement, then it shall be the duty of the commissioners to credit the assessment of benefits against any of said land with such amounts as represent the amount that said benefits are reduced because of said improvements in any part of the said road made by other agencies than the district and accepted by the district as complying with their plans; and in section 36 of the statute it is provided that if the Drew-Desha District, another district created by the Legislature, shall let a contract prior to August 1, 1917, for the construction of a part of the roads embraced in the terms of this statute, credit should be given on the assessment of benefits the same as provided in the preceding section. Otherwise, that that part of the improvement be done through the present agency, that is to say, by the district created under this statute. This whole matter fell within the power of the lawmakers, and it was not beyond that power to determine which of the agencies should construct the roads and under what circumstances. The Legislature had the power, in other words, to provide that the Drew-Desha district should improve a given portion of the road, if done by a certain time, otherwise that it should be embraced in the improvement contemplated by the statute now under consideration. The act does not by any means contemplate double assessment for the same improvement, nor does the construction of the improvement by either one of those agencies nullify the power of the other to proceed with the balance of the authorized improvement. *Boles* v. *Kelley,* 90 Ark. 29; *McDonnell* v. *Improvement Dist. No. 145, Little Rock,* 97 Ark. 334; *Fellows* v. *McHaney,* 113 Ark. 369; *Keystone Drainage Dist.* v. *Drainage Dist. No. 16,* 121 Ark. 16.

The statute enacting the Drew-Desha district was approved and went into effect seven days later than the statute under consideration, and contained no limitation with respect to time for letting contract for construction of this portion of the road. We construe this later statute as an elimination of the period of time specified for let-

ting the contract as to the part of the road referred to, but this does not affect the powers of this district to proceed with the construction if the other district should for any reason fail to do so.

The various questions presented in this case are not free from difficulty, but after mature consideration we are of the opinion that the Legislature has not transcended its power in the creation of this improvement district, and that there are no grounds for holding that the statute is invalid. The learned chancellor erred, therefore, in the decree, and the same is reversed with directions to dismiss the complaint for want of equity.

HART, J., (dissenting). Public roads are constructed to afford the general public a means of transportation between different towns or between farms located on or near them and such towns. In most cases such public roads are paid for by taxation and there has been a conflict in the decisions as to whether abutting land owners can be made to pay for them by local assessments levied upon their farms.

In *Road Improvement District No. 1 v. Glover,* 89 Ark. 513, and in subsequent decisions, this court has held that a local improvement district may be formed for the purpose of constructing and repairing public roads in the county.

In the first mentioned case the court said that such districts are sustainable only upon the theory that the local assessments levied to sustain them are imposed upon the property of persons who are specially and peculiarly benefited in the enhancement of the value of their property by the expenditure of the money collected on the assessment. The term of "local improvements" is generally employed as signifying improvements made in a particular locality by which the real property adjoining or near such locality is specially benefited. In the case just cited the court said:

"According to this theory, the district should not extend beyond the limits of the benefits of the improvement

made in pursuance of the object of its organization, and should not be so extended by many and independent improvements as to include territory in no wise affected by all the improvements. It is obvious the State can not be organized into a district to construct or maintain improvements to be paid for with money derived from local assessments. So counties can not be organized into districts for the building, repairing and maintaining roads without usurping the exclusive jurisdiction of roads vested in county courts by the Constitution. Its roads and need for roads are too numerous, diverse and independent and some too remote from each other to be embraced in one district and sustained by local assessments. In such a case the board of directors of the road district would become a partial substitute for the county court vested with its jurisdiction over roads. We do not mean to apply what we have said to improvement districts including cities and towns. That subject is not presented for consideration in this case, but has been considered in another case. *Crane* v. *Siloam Springs*, 67 Ark. 30."

In the case of *Hammett* v. *The City of Philadelphia*, 65 Penn. St. 155, Mr. Justice Sharswood said:

"Local assessments can only be constitutional when imposed to pay for local improvements, clearly conferring special benefits on the parties assessed, and to. the extent of those benefits. They can not be imposed when the improvement is either expressed, or appears to be, for the general benefit."

Tested by these well known principles of law, I do not think the improvement under consideration is a local improvement. The court will take judicial notice of the boundary lines of counties and of the size and importance of the towns located within their boundaries as well as the general topography of the country. When these facts are considered, together with the size and magnitude of the district as described in the act creating it, I think the majority opinion is violative of the principles of law above announced and compels certain land owners to pay for the improvement of public roads in which their in-

terests are no greater and, as to some of them, not so great as that of many others who pay nothing. In my opinion, the rule laid down by the majority in its application to the country and to the farm lands of this State will lead to great inequality in placing the burdens of taxation and is palpably unreasonable and unjust. It is so obviously unfair that I could not but stop and enter a short but earnest protest against what I consider to be an unwarranted encroachment upon a well known and salutary principle of law, which if properly administered would be of great benefit to the people of this State.