PRATT *v.* DUDLEY.

PRATT *v.* TURNER.

Opinion delivered January 14, 1905.

STATUTE—REPEAL AND RE-ENACTMENT.—The act of February 16, 1901, providing for the establishment of a drainage district in certain territory, which substantially re-enacted, while it repealed, the provisions of the acts of March 8, 1887, and of March 22, 1893, on the same subject, is to be construed as a continuation of the earlier acts, so that a fund raised under their provisions remains a trust in favor of the district created by the later act.

Appeal from Clay Chancery Court.

EDWARD D. ROBERTSON, Chancellor.

Reversed.

STATEMENT BY THE COURT.

These are suits brought by the Board of Levee and Drainage Commissioners and Inspectors of Clay and Greene Counties, against the treasurer and sheriff, respectively, of Clay County, for the purpose of recovering moneys received by these officers from the taxes levied and paid in that district.

The complaint in the case against Dudley alleges that the plaintiffs compose the Board of Commissioners and Inspectors of the Clay and Greene Counties Levee and Drainage District, created under the act of February 16, 1901. That under an act of the General Assembly of March 8, 1887, a levee district, comprising the same territory in Clay and Greene Counties, was established for the purpose of building and maintaining a levee therein; that a board of inspectors was therein provided for, for the purpose of superintending the construction of the levees and of levying a tax as authorized by the act, and of collecting and extending the same, as the act provided. That the act of 1887 was amended in certain particulars by the act of March 22, 1893, and under the provisions of the amendment the treasurer of Clay County was made *ex-officio* treasurer of the board, and required to pay warrants drawn on him by the board out of money coming into his hands from taxes levied by it, and it was further provided that the treasurer shall be liable to the board for all moneys coming into his hands under the provisions of the act. That, under the levy made by the board under the authority of the act of 1893, there are in the hands of defendant, as treasurer, $577.51. That the board authorized a warrant to be drawn on the treasurer for that amount, and a warrant was drawn and presented, and payment refused. That the Board of Commissioners and Inspectors of the Levee and Drainage District created under the act of 1901 are the successors of the board created under the act of 1893, and as such they are entitled to collect the money in the hands of the treasurer. That the treasurer holds the money as trustee, and the plaintiffs, as a board created and established under the provisions of the act of 1901, are entitled to it. They pray that the court declare the fund in the hands of the treasurer to belong to the plaintiffs, and that they are entitled to recover it; and further pray that the court will declare the money to be a trust fund in the hands of the treasurer for the benefit of the Levee and Drainage District of Clay and Greene Counties, and that plaintiffs, as legal successors of the board appointed under the act of 1893, are entitled to it.

The defendant answered, admitting all the allegations of the complaint, except that the plaintiffs are successors to the board created under the act of March 22, 1893, or that they are entitled

as such to the money, which he denied. He alleged that certain taxpayers of the district filed their petition in the Clay County Court, setting up that they were taxpayers; that the district had been abolished by the act of 1901, and that the petitioners as taxpayers were entitled to have refunded to them their *pro rata* of the money in the hands of the defendant; that at the same term of the county court the plaintiffs in this case filed their response to the petitions, setting up their official character, and claiming as such that they were entitled to the money; that upon a hearing in the county court the money was awarded to the taxpayers from which orders these plaintiffs appealed to the circuit court for the Eastern District of Clay County; that at the August term of that court a judgment was rendered dismissing the appeal, from which judgment an appeal was prosecuted to this court, which is now pending.

The following agreed statement of facts was filed:

"In this cause it is hereby agreed by and between the plaintiffs and defendant by their respective solicitors that in addition to the allegations of the complaint herein, which are admitted by the answer herein, the facts of this case are as follows, towit:

"It is admitted that the Board of Commissioners and Inspectors had a called meeting thereof on April 23, 1904, as is alleged in the complaint herein, and that the facts with regard to such meeting and all steps taken thereat, as are alleged in said complaint, are expressly hereby admitted to be true.

"It is further admitted that the sum of $577.51 remained in the defendant's hands as treasurer of Clay County and *ex-officio* treasurer of such Board of Commissioners and Inspectors, as is alleged in plaintiff's complaint, and that the same was paid over to him by the collector of Clay County out of the taxes or assessments for levee purposes for the year 1889, and that the same was so paid over into the hands of the defendant in his official capacity as aforesaid long prior to the passage and approval of the act of February 16, 1901, and that such sum remained in his hand unexpended at the time of the passage and approval of the said last mentioned act, and was levied, collected and paid over to him under the provisions of the amendatory act approved March 22, 1893.

"It is further admitted that the St. Louis Southwestern Railway Company, and others, filed their petitions in the County Court of Clay County, as taxpayers, asking that said fund be by such court ordered to be refunded to them; that the plaintiffs, as Commissioners and Inspectors aforesaid, filed a remonstrance in said court; that the court upon hearing ordered said fund paid over to the petitioners therein as taxpayers; that from such order of said county court they prosecuted an appeal to the circuit court, and there judgment was rendered dismissing the appeal, and from this judgment said Commissioners and Inspectors prosecuted an appeal to the Supreme Court, and such causes now stand for trial in said last mentioned court.

"That the clerk of this court may make copies of all pleadings, orders and judgments which were made or filed in either the county or circuit court in said causes, and attach his certificate thereto to the effect that they are true and correct copies, and file the same herein, and they shall then be considered as a part of the record in this cause, as exhibits to defendant's answer herein."

The cause was submitted upon the pleadings, exhibits thereto and agreed statement of facts, and a decree was entered dismissing the complaint for want of equity.

It appears from the agreed statement of facts that the money now in the hands of the defendant is the proceeds of taxes for the year 1899, and was received by the defendant prior to the passage of the act of February 16, 1901.

There is no difference in the transcript in the case against Turner, except that he is sued as sheriff and *ex-officio* collector and by the agreed statement of facts it is made to appear that the moneys in his hands, towit: $734.49, were for the taxes of 1900, and that part of them was received by him before the passage of the act approved February 16, 1901, and part after the passage of that act. What part was received before, and what part after, the passage of the act, is not shown.

*L. Hunter, Johnson & Huddleston, Rose, Hemingway & Rose,* for appellants.

The re-enactment of an earlier statute is a continuance, not a repeal by the latter, even though the latter act

expressly repeals the earlier. Endlich, Interpretation of Stat. § 490; Suth. Stat. Contr. § 134; 130 Mass. 325; 9 So. Rep. 447; 2 Wall. 450; 5 Met. 400; 43 N. W. 527; 164 U. S. 12; 29 Pac. 44; 10 Ark. 588; 47 Ark. 488. The existence of the act was never ended, but continuous. The Legislature will be presumed to have intended such result, and the courts will accordingly administer the law. 93 U. S. 266; 6 Lea, 735; 56 Ark. 148. If the Legislature destroyed the corporate entity, its property still belonged to its incorporators, and could be applied only to their use. 56 Ark. 153; 18 Wall. 151. A court of equity will not permit a trust to fail. 4 Ark. 302; 50 Ark. 141; 10 Cyc. 1272c; 15 Fed. Cas. 922, 927. The taxpayers had no right to the funds. 2 Cooley, Tax. (3d Ed.), § 1495$n$; 31 L. R. A. 339. The county court had no jurisdiction of the subject-matter. 21 Ark. 40, 51; 48 Ark. 370. An estoppel cannot arise by reason of a void judgment. 2 Free. Judg. 119; 48 Am. Dec. 353; 52 Am. Dec. 390.

WOOD, J., (after stating the facts.) An examination of the acts convinces us that the purpose of the Legislature in each, so far as the levee district is concerned, is the same. The last act (1901), while "repealing all laws and parts of laws in conflict with it," does not repeal those that are not in conflict. The first act (1887) (and the amendatory act of 1893), establishing the levee district, and creating a Board of Commissioners and Inspectors, to be appointed by the county court, and defining the powers and duties of such board, is not in conflict with the act of 1901, so far as the general purpose of maintaining a levee in the territory defined is concerned. All the provisions relating to the preservation of the levee are in harmony. Where there are differences in the acts, they relate to matters of administrative detail only, all looking to the same end of maintaining the levee. The whole scope of the acts indicates a purpose, in the first place, to erect the levee, and. in the second place, to maintain it in the territory named. The last act re-enacted substantially the act of 1887 and the amendatory act of 1893, and gave to the Board of Commissioners and Inspectors of the Levee District the power to dig a ditch, in addition to the power to repair and maintain the levee. We are quite sure that the Legislature of 1901 did not intend to annihilate the Levee District of Clay and

Greene Counties created by the act of 1887, and to extinguish all that had been done under that act. But the purpose was to continue the incorporation and the board, with a change from time to time in the personnel of its membership, and to give it added functions and powers.

The repeal of the act of 1887 and amendatory act of 1893 by the act of 1901 was rather by substitution than by conflict, upon the familiar rule that when the Legislature takes up the entire subject-matter of a prior law, and covers it with a new enactment, the new law, although there may be some added provisions, will repeal the old. But these provisions of the old law, not in conflict, are rather continued and merged in the new, which is substituted for it; at least, it will be presumed that such was the legislative intent. *Broughton* v. *Pensacola,* 93 U. S. 266, 270; *O'Connor* v. *Memphis,* 6 Lea, 735, 736. See also, 8 Rose's Notes, U. S. Rep., 955, for cases cited.

"It is a familiar rule of construction," says the court in *United Hebrew Ass'n* v. *Benshimol,* 130 Mass. 325, 327, "that when statutes are repealed by acts which substantially retain the provisions of the old laws, the latter are held not to have been destroyed or interrupted in their binding force. In practical operation and effect, they are rather to be considered as a continuance and modification of the old laws than as an abrogation of those old and the re-enactment of new ones." *Forbes* v. *Board of Health,* 9 So. 447, 27 Fla. 194; *Wright* v. *Oakley,* 5 Met. 400; *Steamship Co.* v. *Joliffe,* 2 Wall. 450; Sutherland, Stat. Const. § 134; Endlich, Int. Stat. 490, and other authorities cited in appellant's brief.

It appears that the fund in controversy was the result of a valid impost for levee purposes. It belonged to the Levee District of Clay and Greene Counties, and the appellants, who constitute the Board of Commissioners and Inspectors for such district, are entitled to this fund to be used for levee purposes under the law. It is a trust fund in their hands for that purpose.

These causes are properly before this court. The county court under the act had no jurisdiction over the funds or the officers holding them.

The proceeding in chancery was proper to recover trust funds and have them duly administered.

The decree is therefore reversed, and the causes are remanded with directions to reinstate complaints and to enter a decree for the appellants.