STATE v. SOUTHWESTERN LAND & TIMBER COMPANY.

Opinion delivered February 21, 1910.

1. LEVEES—SUCCESSION TO PROPERTY OF LEVEE INSPECTORS.—The swamp land commissioners of Chicot County, elected under the act of January 10, 1861, were the successors to the levee inspectors of that county elected under the act of January 7, 1857, and entitled to all the assets held by the latter for the building of levees in Chicot County.   (Page 628.)

2. STATUTES—REPEAL.—A general statute will not be held to repeal a prior special statute, where there is no express repeal and no invincible repugnancy between the two statutes.   (Page 629.)

3. LEVEES—SUCCESSION OF PROPERTY.—The act of March 20, 1883, providing "for building and repairing levees in Chicot County," in effect revived the act of January 7, 1857, providing for making and repairing levees in Chicot County, as well as the provisions of the act of January 10, 1861, relating to the same subject, and as a consequence property owned by the boards created by the earlier acts passed in succession to the board created by the later act.   (Page 629.)

Appeal from Poinsett Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*Hal L. Norwood,* Attorney General, and *C. A. Cunningham,* Assistant, for appellant; *Murphy, Coleman & Lewis,* of counsel.

1. The act of 1857 was repealed by the act of 1861. (Acts 1861, 161), but the old board continued to act until 1862, when the last meeting was held. A meeting in 1867 is not proved.

2. No title passed by the assignment of the certificates of entry. The legal title was in the State, only the equitable title

passing to the board, a creature and agency of the State. Upon the legal death of the board the lands reverted to and vested in the State. 44 Ark. 454; 49 *Id.* 87.

3. The board has no authority to delegate its powers to a third person. The power of attorney was a nullity. 1 Am. & E. Enc. Law (2 ed.), p. 973; 23 Ark. 87.

4. The State is not bound by the wrongful acts of its agents. 39 Ark. 582.

*J. C. Hawthorne,* and *Block & Sullivan,* for appellee.

1. The Chicot special acts created a corporation. 87 Ark. 493; 147 Ill. 598; 95 Ky. 414; 29 N. J. L. 36; 60 Miss. 318; 5 Mich. 119.

2. Mere inaction by the board would not terminate its existence. 98 Cal. 51; 1 Dill. 130; 24 Ala. 398; 98 *Id.* 359; 5 Ill. 269; 3 Burr. 1866; 72 Tex. 182; 28 Cyc. 250-2.

3. The acts of 1879 and 1883 did not repeal the act of 1857, a special law. 72 Ark. 120; 80 *Id.* 413; 50 *Id.* 134; 53 *Id.* 417; 63 *Id.* 397.

4. The board of 1883, and not the State, succeeded to all rights of the old board. 73 Ark. 541.

5. The power of Reynolds was coupled with an interest. 36 Ark. 599; 11 *Id.* 709.

6. The patents passed the title. 31 Ark. 425; 44 *Id.* 452; 27 *Id.* 200.

7. Whatever claim the State had passed to the St. Francis Levee District. 70 Ark. 358.

Battle, J. The State of Arkansas, on the relation of L. C. Going, prosecuting attorney, for the use of Board of Directors of the St. Francis Levee District, brought this action against the Southwestern Land & Timber Company on the 14th day of August, 1907, and alleged that certain lands, consisting of 14,700 acres, and lying in the county of Poinsett, in this State, had escheated to the State of Arkansas in 1863; that Daniel H. Sessions, as president of the Board of Levee Inspectors of Chicot County, was last lawfully seized in trust for such Board of Levee Inspectors; and that the circumstances in consequence of which the lands escheated to the State are substantially as follows: On the 5th day of March, 1860, the Board of Levee Inspectors of Chicot County purchased the

lands from the State with levee warrants belonging to the Board, and the State's certificates of entry were issued to Daniel H. Sessions, as president of the board for the same, and he thereby acquired the certificates and the equitable title to the lands in trust for the board. In 1862 the board was dissolved. At the time of its dissolution it was the absolute owner of the lands, and owed no debts, and had no successor or representative capable of succeeding to the lands, and the result was the lands escheated to the State. In August, 1883, the defendant fraudulently procured from the State Land Commissioner a patent to the lands by falsely representing that it was the equitable owner of the same as a result of its being the last assignee of the certificates, which representations were untrue and known to be false at the time, and were made for the purpose of deceiving the Land Commissioner. As a part of its scheme to procure the patent, the defendant wrongfully obtained possession of the certificates, and caused indorsements to be made upon them purporting to be assignments thereof by Daniel H. Sessions, as president of the board, by his attorney in fact, D. H. Reynolds, to John T. Burns, bearing date January 10, 1882, and from John T. Burns to the defendant, bearing date August 10, 1883. The alleged power of attorney from Sessions, as president, to D. H. Reynolds bears date the 5th day of December, 1867, when Sessions was not the president of the board, and had no authority to execute the power of attorney or to assign the certificates, and when the board was not in existence, and had not been for five years, all of which was well known to defendant before the 10th day of August, 1883, when it presented the certificates, power of attorney and assignments to the Land Commissioner, and procured patents; and it was also well known to the defendant at the time that the land had escheated to the State, and that this fact was unknown to the commissioner.

The plaintiff asked for final judgment, vesting title to the land in the State of Arkansas for the use of the Board of Directors of the St. Francis Levee District.

Plaintiff amended its complaint by alleging as follows: "By the act of January 7, 1857, the State Legislature authorized the election of five levee inspectors in Chicot County to supervise

the construction and repairing of levees in that county; that the State had undertaken the construction and repairing of these levees in execution of the trust imposed by the swamp land grant from the Federal government; that these Chicot County levee inspectors were merely administrative agents of the State in carrying on the work; that, in the discharge of their duty, this board acquired levee scrip from the State to be used in payment for work done on the levees, and with this scrip the board had entered the lands described in the original complaint, and certificates of entry had been issued to Daniel H. Sessions, as president of the board to enable the board to use the lands, or the proceeds thereof, in the further prosecution of the levee work; that neither Daniel H. Sessions, nor the board, nor any member thereof, had any beneficial interest in the land, but the same belonged to the State, and was to be used exclusively in the work of building and repairing levees; that this board disbanded in July, 1862, at which time the entire work of building and reparing levees, under the act of January 7, 1857, was terminated and abandoned; that no further meetings of the board were held after that time, and no disposition of these lands were made by the board, or attempted to be made; that the legal title to the lands was then in the State, and that the State also owned the equitable title, because the lands had never been used for the purpose for which they were granted to this Board of Levee Inspectors."

Defendant answered and alleged that Sessions held the certificates of entry in trust to sell and apply the proceeds of sale to the discharge of obligations in favor of certain contractors who had built levees in Chicot County, for the building of which the land warrants used in the purchase of the lands had been issued by the State; that, if any claim or interest existed in the board on these warrants or the lands, it was only to the extent of directing the sale thereof and the application of the proceeds by Sessions to the discharge of the indebtedness due to the contractors; that the defendant, in August, 1883, received patents for the land from the Commissioner of State Lands, and became the absolute owner of the premises; that prior to the 5th day of December, 1867, the board passed a resolution directing its president, Sessions, to execute to Daniel H. Rey-

nolds a power of attorney authorizing and impowering him to dispose of the certificates and the lands and to apply the proceeds in discharge of sums due for the construction of levees in Chicot County, as evidenced by its outstanding and unpaid warrants; that, in accordance with this resolution, Sessions, on the 5th day of December, 1867, executed the power of attorney to D. H. Reynolds; that on the 10th day of January, 1882, this indebtedness still being in existence, Reynolds, acting under the power of attorney, sold and transferred the certificates of entry to John T. Burns, and used the proceeds of sale in discharging warrants issued by the board; and upon Burns's subsequent assignment of the certificates to the defendant it acquired the equitable title; and the defendant, except those directly or impliedly admitted, denied the allegations in the complaint and the amendment of the same.

Plaintiff amended its complaint by striking out the words "for the use and benefit of the Board of Directors of the St. Francis Levee District" wherever they occur.

The defendant moved to transfer the cause to the Poinsett Chancery Court, which was done.

A short time after the enactment of the act entitled "An act to provide for making and repairing levees in Chicot County," approved January 7, 1857, five levee inspectors were elected in that county, who organized as a board, and proceeded to discharge their duties under the act, and laid off the county into five levee districts. On the 5th day of May, 1857, the board met and authorized and instructed its president to apply to and contract with State engineers of this State for the building of all the levees in the county of Chicot which may be let out under the provisions of the supplemental act of the General Assembly, approved the 13th day of January, 1857. He entered into twenty or more such contracts for and in behalf of such board and with the State of Arkansas, acting by and through William B. Gaw, an engineer, under the authority and instructions of the Governor of the State. On the 22d day of December, 1857, the board met and ordered the president to sublet, at private letting, all contracts he had made with the State, requiring the subcontractor in every case to receive from him payment for work at such time and in the manner that he should receive payment

from the State under the contracts with the State, and to receive the same rates as should be paid by the State, "unless said work could be subcontracted at less rates." In subsequent resolutions they ordered that such subcontractors, when their work was done, should have precedence, and should be first paid out of money received from the State for such work. The board, through subcontractors, performed its contracts with the State, or a part of them, and received Auditor's warrants of the State in payment, which were receivable in payment for swamp lands. On the 5th day of March, 1860, Daniel H. Sessions, as president of the board, applied to the agent of the State to purchase the lands in controversy, which are swamp lands, and did purchase them and paid for the same with such Auditor's warrants, and as such president received certificates of entry for the lands. There is some evidence that a meeting of the board was held in 1867. A result of that meeting was a power of attorney, which, in part, is as follows:

"Whereas, the Board of Levee Inspectors of Chicot County, Arkansas, in 1860, purchased certain lands of the State Land Office in Helena, for which certificates were issued to me, Daniel H. Sessions, as president of said board, by John C. O. Smith, State Land Agent for the Helena District, and which certificates are numbered as follows: 4601, 4602, 4603, 4604, 4605, 4606, 4607, 4608, 4613, 4615, 4617, 4618, 4619½ and 4621; and,

"Whereas, said Board of Levee Inspectors did at a meeting held on the first Monday and second day of September, 1867, appoint Daniel H. Reynolds of said county their agent and attorney in fact to take charge of all said lands and to sell and dispose of the same, or any part thereof, upon such terms as to him might seem best, and to redeem any of said lands that may have been heretofore sold or forfeited for nonpayment of taxes, and to pay taxes upon any of said lands from time to time; and did direct me as president of said board of levee inspectors to execute to said Daniel H. Reynolds a power of attorney to carry out the objects of said appointment.

"Now, therefore, know ye, that I, the said Daniel H. Sessions, as such president as aforesaid, by virtue of the authority aforesaid, have made, constituted and appointed, and do by these

presents make, constitute and appoint, the said D. H. Reynolds the true and lawful attorney of said board of levee inspectors, and for me and in my name as such president to sell and convey any or all of the lands mentioned in said certificates to such person or persons and for such price as he shall think fit and convenient, and to assign and transfer any or all of said certificates, or to make and execute any deeds or other instruments in writing in relation to the sale of any or all of said lands and of the transfer of any or all of said certificates, and to redeem any of said lands that may have been sold or forfeited for the nonpayment of taxes and to pay such taxes as may from time to time become due on any of said lands; hereby ratifying and confirming all such assignments, transfers, deeds, conveyances or sales as may be made by said attorney touching the matters hereinbefore mentioned.

"In testimony whereof, I, the said Daniel H. Sessions, as such president aforesaid, have hereunto set my hand and seal this 5th day of December, 1867.

(Signed)      "D. H. Sessions (Seal)."

On the 10th day of January, 1882, Reynolds executed in the name of Sessions an assignment of the certificates of entry to John T. Burns; and on the 10th day of August, 1883, Burns assigned them to the defendant, the Southwestern Land & Timber Company, and on the day following it received a patent from the Commissioner of State Lands, of this State, for the lands.

These lands have been regularly assessed for State and county taxes, and the defendant has paid the taxes continuously since 1884, expending thereby the aggregate sum of $10,968.34. The Board of Directors of the St. Francis Levee District have regularly and annually assessed levee taxes on the land, and the defendant has likewise paid them, those for 1893 and 1894 having been paid by redemption and others in regular course, and in so doing paid in the aggregate $10,584. It has in 1883 and until 1899 spent annually large sums of money in looking after them and in protecting the timber growing on the same from depredation.

The lands are unimproved and uninclosed, and have never been in the actual possession of any one, and are chiefly valuable

for their timber. They were worth about one dollar an acre in 1883, about $2.50 an acre in 1899, and were worth $15 an acre at the commencement of this suit, which was the 14th day of August, 1907.

There is no evidence of the meeting of the Board of Levee Inspectors, which was organized under the act of the 7th day of January, 1857, since the 14th day of July, 1862, unless one was held in 1867. All the members of the board have died or removed from the State. The outstanding warrants of the board on the 14th day of July, 1862, amounted to $265,013.31.

Upon final hearing the chancery court dismissed the plaintiff's complaint for want of equity, and the State appealed.

This suit was first brought in the name of the State for the use of the Board of Directors of the St. Francis Levee District. It had no such power. If the lands belonged to such board, it had the right to institute and maintain a suit to recover them in its own name, as it is a body politic and corporate with power to sue. Acts of 1893, page 24. But the State amended its complaint by striking out the words "for the use and benefit of the Board of Directors of the St. Francis Levee District" wherever they appear in the complaint. The State thereby sought to recover the lands in its own right. Is it entitled to maintain the suit? The lands are swamp lands, and were granted to the State by an act of Congress entitled, "An act to enable the State of Arkansas and other States to reclaim the 'swamp lands' within their limits," approved September 28, 1850. They were sold to the "Board of Levee Inspectors of Chicot County," and the proceeds of the sale were appropriated for the purpose of reclaiming the swamp lands as provided by the act of September 28, 1850. The State parted with the title to the same. We see no way in which it could have regained title, except by escheat. Has it done so?

The lands were acquired by the Board of Levee Inspectors of Chicot County, and thereby became assets in its hands for the building of levees to protect lands in Chicot County against overflows of water, and remained so during the existence of that board. In 1861 the General Assembly of this State passed an act entitled "An act to protect all land in Chicot County which is subject to overflow," approved January 10, 1861. This act

provided that the qualified voters of that county shall at every general election elect five swamp land commissioners; that the districts then established in the county, and known as levee districts, shall be known as swamp land districts, and each of them shall be entitled to elect one of such commissioners, and that these commissioners shall constitute a board and elect a president and other officers named; and imposed upon them, substantially, the duties of the board organized under the act of January, 7, 1857; and provided that the levee inspectors, of Chicot County shall be deemed the predecessors of the first swamp land commissioners elected under the act of 1861, and shall be governed in all things, as far as may be practicable, by the act of 1861, during the remainder of their term of office, as if they had been elected swamp land commissioners under the act of 1861. The swamp land commissioners of the act of 1861 thereby became the successors of, or substitutes for, the levee inspectors of the act of 1857, and entitled to and owners of all the assets held by the inspectors for the building of levees in Chicot County. The same duties were imposed upon them; they are entitled to the means in the hands of the levee inspectors to accomplish the purposes for which the board of swamp land commissioners was created.

It is said that the act entitled "An act to provide for building and repairing the public levees of this State," approved March 20, 1879, "repealed all previous laws for the construction of levees." But it is a general statute and the act of January 10, 1861, was a special statute; and, the former not expressly repealing the latter and there being no invincible repugnancy between the two, the former did not repeal the latter. *Chamberlain* v. *State,* 50 Ark. 134; Ex parte *Coleman,* 54 Ark. 235; *Baugher* v. *Rudd,* 53 Ark. 417; *Durrett* v. *Buxton,* 63 Ark. 397; *St. Louis S. W. Ry. Co.* v. *Grayson,* 72 Ark. 119; *Lawyer* v. *Carpenter,* 80 Ark. 413.

In 1883 the General Assembly, by an act entitled "An act to provide for building and repairing levees in Chicot County," approved March 20, 1883, in effect and in the main revived the act of January 7, 1857, with some changes or additions which did not affect the identity of the act. The object of the three acts of 1857, 1861 and 1883 was the same, and the means pre-

scribed for accomplishing it were substantially the same; either of the last two boards created by the acts being a successor of the one preceding. As said in *United Hebrew Ass'n.* v. *Ben-shirmol,* 130 Mass, 325, 327, the latter two acts are in practical operation and effect a continuance and modification of the preceding acts, and not an abrogation of the preceding and the re-enactment of new ones. As a consequence of this legislation, property owned by one board passed to its successor, and, if the assignments of the certificates of entry, respectively, to Burns and the appellee be void, the lands in controversy did not escheat to the State, but passed to the board organized under the act of March 20, 1883, for building and repairing levees in Chicot County. *Pratt* v. *Dudley,* 73 Ark. 536. Further than this it is unnecessary for us to determine. The State has no right to recover the lands.

Decree affirmed.